# JALANI WILLIAMS Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS Appellee/Plaintiff

S. Ct. Crim. No. 2009-0111

Supreme Court of the Virgin Islands

April 19, 2010

CHARLES E. LOCKWOOD, ESQ., Nichols, Newman, Logan & Grey, P.C. St. Croix, USVI *Attorney for Appellant.*

PAUL J. PAQUIN, ESQ., AAG, Dept. of Justice, St. Thomas, USVI *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

### (April 19, 2010)

HODGE, C.J. Appellant, Jalani Williams ("Williams"), appeals from a November 25, 2009 Superior Court order which detained him without bail pending trial. For the reasons which follow, we will reverse the pre-trial detention order and remand with instructions for the Superior Court to conduct a new pre-trial detention hearing consistent with our holdings herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 1:13 a.m. on August 2, 2009, the police received a report that gunshots had been fired in the vicinity of Gertrude's Restaurant in Christiansted, St. Croix. A subsequent investigation by Detective Richard Matthews ("Detective Matthews") led to the arrest of Williams.[1]

On October 8, 2009, the People of the Virgin Islands ("The People") moved to seal the investigatory records on grounds that disclosure of the information therein would jeopardize the apprehension of additional suspects. The trial court granted the People's motion to seal on October 9, 2009. On the same day, the People filed an information that charged Williams with numerous counts including one count of murder in the first

---

[1] Although Williams was a minor at the time of arrest, a judge of the Family Division of the Superior Court transferred Williams to the Criminal Division for trial as an adult, pursuant to V.I. CODE ANN. tit. 5 § 2508(b)(4).

degree, pursuant to V.I. CODE ANN. tit. 14 §§ 922(a)(1) and 11(a).[2] Thereafter, the People moved to detain Williams without bail pending trial. The trial court held a pre-trial detention hearing on October 26, 2009 at which Williams was present and represented by court-appointed counsel.

At the pre-trial detention hearing, the People's sole witness was Detective Matthews, who gave the following account of the events that occurred during the early morning hours of August 2, 2009. Detective Matthews testified that two police officers heard shots in the vicinity of Gertrude's Restaurant, where a crowd of people were gathered. The officers then witnessed a male dressed in black jump through the passenger-side window of a Honda Accord. The officers began to pursue the Honda with their siren on and radioed for backup. Two officers, who were patrolling the area in which the Honda was headed, set up a partial roadblock with their marked police vehicle and attempted to stop the Honda as it approached. When the Honda continued to drive towards them and refused to stop, the officers opened fired on the vehicle as it passed the roadblock. The police officers who had pursued the Honda from the scene of the shooting continued their pursuit until the Honda collided with a truck and came to a stop. According to Detective Matthews's testimony, two individuals exited the Honda and fled on foot in different directions. Both individuals were eventually apprehended. The passenger of the Honda was later identified as Williams, and the driver was later identified as Khareem Hughes ("Hughes").[3] Williams was subsequently searched and allegedly found in possession of two firearms and an empty magazine clip.

Detective Matthews testified that his investigation revealed that three males were taken to the hospital with multiple gunshot wounds and that one of them, Almanzo Williams ("Almanzo"), died two hours later from multiple gunshot wounds to the abdomen. His investigation also revealed

---

[2] Williams was also charged with two counts of assault in the first degree, pursuant to 14 V.I.C. §§ 295(1) and 11(a), two counts of possession of a firearm during the commission of a crime of violence, pursuant to 14 V.I.C. §§ 2253(a) and 11(a), one count of reckless endangerment in the first degree, pursuant to 14 V.I.C. §§ 625(a) and 11(a), and two counts of attempted assault in the third degree, pursuant to 14 V.I.C. §§ 297(5), 331, and 11(a).

[3] Although Williams and Hughes were co-defendants at the pre-trial detention hearing, only the facts relevant to Williams are recounted herein because Hughes did not appeal his pre-trial detention to this Court.

that more than forty shell casings were recovered at the scene and that a preliminary examination indicated that some of the casings matched one of the firearms allegedly found in Williams' possession. Detective Matthews interviewed two witnesses who identified several individuals as being involved in the shooting. One witness — described only as W-1 — stated that he/she observed Joh Williams a.k.a. Lion ("Joh") and another individual shooting at Almanzo and those standing near him. W-1 later identified Joh from a photo array. Another witness — described only as W-2 — was interviewed twice by Detective Matthews. During the first interview, W-2 only identified Joh as one of the shooters. More than a week later, W-2 contacted Detective Matthews and also identified Williams as a shooter. According to Detective Matthews's testimony, W-2 told him that Williams had stood over Almanzo's body, which was lying on the ground, and shot him twice. W-2 positively identified Joh from a photo array but was never asked to identify Williams from a photo array.

Following his direct examination by the People, Detective Matthews was cross-examined by Williams' counsel. Williams did not testify at the pre-trial detention hearing, nor did he call any witnesses on his behalf. After hearing arguments from each party, the trial court issued its ruling, holding that the People had met the standard set out by this Court's decision in *Browne v. People*, 50 V.I. 241 (V.I. 2008), *cert. denied*, No. 08-4186 (3d Cir. Oct. 29, 2008). Specifically, the trial court concluded that the People had proven by clear and convincing evidence that Williams had committed the crime of first degree murder. As a result, the trial court ordered Williams detained without bail pending trial. A November 25, 2009 order memorialized the trial court's ruling and listed twenty-two separate findings of fact in support of its decision.

On November 9, 2009, Williams filed a timely notice of appeal.[4] On December 17, 2009, Williams moved for expedited consideration of his appeal, and the People filed an opposition on December 29, 2009. In a January 13, 2010 Order and Expedited Briefing Schedule, this Court granted expedited review, holding that 4 V.I.C. § 33(d)(4) and Supreme Court Rule 9(a) mandate expedited review of pre-trial detention orders.

---

[4] "A notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I.S.CT.R. 5(b)(1).

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court." 4 V.I.C. § 32(a). However, "[a]n appeal by a defendant . . . pursuant to section 3504a, of title 5 of the Virgin Islands Code . . . shall lie to the Supreme Court from a decision or order, entered by the Superior Court, detaining a person charged with or convicted of an offense . . . [and t]he appeal shall be determined promptly." 4 V.I.C. § 33(d)(4).

The People argue that this Court lacks jurisdiction to hear Williams' appeal both because Williams did not move for expedited review within fourteen days as prescribed by Supreme Court Rule 5(e) and because Williams' Notice of Appeal was filed in this Court rather than in the Superior Court as required by Supreme Court Rule 5(b)(1). Because both of the People's contentions lack merit, we address them only briefly.

■ First, the People contend that this Court improperly granted Williams' untimely motion for expedited review because we failed to make a finding of good cause for suspending Supreme Court Rule 5(e)'s fourteen-day time period pursuant to Supreme Court Rule 2.[5] Importantly, however, Rule 5(e) does not bestow jurisdiction over this appeal; rather, it is 4 V.I.C. § 33(d)(4) which grants this Court jurisdiction over pre-trial detention orders. Furthermore, as our January 13, 2010 Order clearly stated, 4 V.I.C. § 33(d)(4) *requires* that such orders be given expedited consideration.

■ Second, although Williams' Notice of Appeal is captioned "In the Supreme Court of the Virgin Islands," his Certificate of Service indicates that he served the Superior Court with the notice of appeal. In fact, the Superior Court Docket Entries indicate that the Superior Court duly docketed the notice of appeal on November 9, 2009, the same day that it was filed with this Court. Moreover, Supreme Court Rule 5(b)(6) clearly states that, "[i]f a notice of appeal is mistakenly filed with the Supreme Court, the Clerk of the Supreme Court shall note thereon the date on

---

[5] We note that the People's opposition to Williams' motion for expedited review did not raise the untimeliness of the motion as a ground for opposition. Instead, the People argued only that Williams had failed to show an exceptional reason for expediting his appeal.

which it was received and transmit it to the Clerk of the Superior Court and it shall be deemed filed in the Superior Court on the date so filed in the Supreme Court." Accordingly, this Court does not lack jurisdiction over this appeal either because Brown's motion for expedited review was untimely or because the notice of appeal was not originally filed with the Superior Court.

Our review of the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). To the extent that Williams challenges the sufficiency of the evidence leading to his pretrial detention, we review the trial court's findings *de novo. See Browne*, 50 V.I. at 246; *see also United States v. Delker*, 757 F.2d 1390, 1399 (3d Cir. 1985) ("[A]ppellate courts [should] give the reasons articulated by trial judges respectful consideration, but if, after careful assessment of the trial judge's reasoning, together with such papers, affidavits, and portions of the record as the parties present, the court of appeals independently reaches a conclusion different from that of the trial judge the court of appeals has the power to amend or reverse a detention or release decision.").

### B. The Trial Court Erred in Concluding that the Hearsay Evidence Presented by the People at the Pre-trial Detention Hearing Was Clear and Convincing

As one ground for appeal,[6] Williams contends that the trial court erred in detaining him without bail pending trial because the People did not show by clear and convincing evidence that he committed the crime of first degree murder.

█ █ Faced with the existence of conflicting laws governing the issue of pre-trial bail in the Virgin Islands, this Court held in *Browne* that:

> section 3 of the [Revised Organic Act ("ROA")] governs the issue of pretrial detention for first degree murder defendants in local Virgin Islands courts, and that title 5, section 3504a [of the Virgin Islands

---

[6] Williams also argues on appeal that his due process rights and his right to confront the witnesses against him were violated by the People's presentation of the evidence at the pre-trial detention hearing. Given our holdings herein with respect to Williams' first issue on appeal, we do not reach his two other grounds for appeal.

Code] is inapplicable to the extent that it purports to grant pretrial bail for defendants charged with first degree murder in the Superior Court under Virgin Islands law where the proof is evident or the presumption great.

50 V.I. at 257-58.[7] Subsequently, we held in *Tobal v. People*, 51 V.I. 147, 160 (V.I. 2009), that "section 3 of the ROA mandates that Virgin Islands judges grant bail in sufficient sureties to all defendants other than those charged with first degree murder where the proof is evident or the presumption great." In this case, the People charged Williams with first degree murder, among other crimes. Thus, Williams may be detained without bail pending trial if the proof is evident or the presumption great that he committed first degree murder.

■ Our decision in *Browne* established both the burden of proof and the standard of proof required to detain without bail a defendant charged with first degree murder. After surveying the jurisdictions with pre-trial detention provisions similar to section 3 of the ROA, we held that the burden of proof rests on the People to prove by clear and convincing evidence that the defendant committed the crime of first degree murder. *See Browne*, 50 V.I. at 260-63. In so holding, we rejected the minority approaches which would require either a showing of probable cause or proof beyond a reasonable doubt that the defendant committed the crime charged. *See id.* at 262. As we indicated in *Browne*, the purpose of the bail hearing is not to determine the ultimate question to be resolved at trial. *See id.* (quoting *Fountaine v. Mullen*, 117 R.I. 262, 366 A.2d 1138, 1142 (1976)). Thus, the trial judge should focus on the strength of the People's evidence rather than the defendant's ultimate guilt or innocence, *see Browne*, 50 V.I. at 262-63, and may not resolve direct conflicts as to inculpatory and exculpatory facts, *see Browne*, 50 V.I. at 266.

---

[7] Section 3 of the Revised Organic Act ["ROA"], known as the "Bill of Rights," provides, *inter alia*, that "[a]ll persons shall be bailable by sufficient sureties in the case of criminal offenses, except for first degree murder or any capital offense when the proof is evident or the presumption is great." The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86 (1995) (preceding V.I. CODE ANN. tit. 1). By contrast, 5 V.I.C. § 3504a, titled "Detention prior to trial," purports to provide for the pre-trial detention of "person[s] charged with [the dangerous crimes of] murder in the first degree, rape in the first degree, arson in the first degree, robbery in the first degree, burglary in the first degree, kidnapping for ransom, or drug trafficking." 5 V.I.C. § 3504a(a)(1).

In the instant case, the trial court correctly noted the burden and quantum of proof required by section 3 of the ROA. However, Williams argues on appeal that the trial court improperly considered several disputed facts in contravention of our holding in *Browne*. As a result, Williams argues that the People failed to prove by clear and convincing evidence (1) that Williams shot Almanzo, (2) that Almanzo died from gunshot wounds caused by Williams, and (3) that Williams premeditated[8] the killing of Almanzo. Because we ultimately conclude for the reasons explained below that the hearsay evidence presented by the People was not clear and convincing, we find it unnecessary to address Williams' particular arguments.

██ Importantly, we review the findings in a pre-trial detention order *de novo. See Browne*, 50 V.I. at 246. "[I]f, after careful assessment of the trial judge's reasoning . . . [this Court] independently reaches a conclusion different from that of the trial judge [this Court] has the power to amend or reverse a detention or release decision." *Delker*, 757 F.2d at 1399. After carefully assessing the record in this case, it is evident to this Court that the People presented and the trial court relied exclusively upon hearsay evidence[9] in finding that there was clear and convincing evidence that Williams committed first degree murder. Specifically, the People presented only Detective Matthews's testimony in support of pre-trial detention. The People did not call any other witnesses, nor did the People offer any exhibits for admission into evidence. As the following colloquy illustrates, Williams elicited testimony on cross-examination from Detective Matthews which indicated that all of his testimony was based upon statements made to him by others:

Q: So, it is also fair to say that everything that you have testified to today is the result of your talking with other people, correct sir?

A: Yes, sir.

Q: You did not personally observ[e] the incident?

A: No, sir.

---

[8] Williams was charged under 14 V.I.C. § 922(a)(1), which defines first degree murder as "[a]ll murder which . . . is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing."

[9] "Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence . . . ." 5 V.I.C. § 932.

Q: You weren't personally engaged in the pursuit of the vehicle?

A: No, sir.

Q: You weren't personally engaged in apprehending either one of the two gentlemen who is sitting here today?

Q: Myself, no, sir.

(Hr'g Tr. 30, Oct. 26, 2009.) Moreover, as the following testimony demonstrates, some of Detective Matthews's testimony contained multiple layers of hearsay:

Q: And you record in your affidavit, "Dr. Seaver began treating Almanzo Williams for multiple gunshots, wounds to his abdomen, however, on August 2, 2009, Dr. Seavers pronounced Almanzo Williams dead." Correct?

A: Yes, sir.

Q: Where did you get that information?

A: Detective Rodriguez.

Q: And where did Detective Rodriguez get that information?

A: Well, from the hospital.

Q: You know that the hospital isn't really a person. Who is the person that gave [her] that information?

A: I am sure somebody that ha[d] the information at the hospital gave her that information.

Q: So, you don't know where that information came from?

A: From Detective Rodriguez and she got it from the hospital. I didn't ask her where she personally got it from.

Q: So you don't know if she actually spoke to somebody to get that information versus, for example, reading it from a report; correct?

A: That's correct.

(Hr'g Tr. 59-60.)

Our independent review of the evidence presented at the pre-trial detention hearing compels us to consider whether the exclusively hearsay evidence presented by the People in this case meets the clear and convincing standard. As a threshold matter, we must determine whether hearsay evidence is permissible at pre-trial detention hearings in local Virgin Islands courts.

### 1. 5 V.I.C. § 3504a(b) Permits the Presentation of Hearsay Evidence at Pre-trial Detention Hearings in Local Virgin Islands Courts

Prior to the presentation of the People's evidence at the pre-trial detention hearing, the trial court addressed Williams' motion opposing the People's motion for pre-trial detention on grounds that there were constitutional implications stemming from the fact that the People's sole evidence would be the hearsay testimony of Detective Matthews. The People countered that "Congress has specifically allowed for hearsay in this type of hearing." (Hr'g Tr. 6.) The trial court ultimately held that "[t]his particular proceeding permits the use of hearsay testimony." (Hr'g Tr. 8.)

 In considering whether hearsay is permitted at pre-trial detention hearings in local Virgin Islands courts, we look to the Virgin Islands Code to determine whether the Virgin Islands Legislature[10] has authorized the admission of such evidence. As noted above, the Legislature enacted 5 V.I.C. § 3504a to govern pre-trial detention. This Court has previously held that section 3504a is inapplicable to the extent it purports to govern pre-trial bail for defendants charged with first degree murder in local Virgin Islands courts, *see Browne*, 50 V.I. at 257-58, and to the extent it purports to allow for pre-trial detention of defendants charged with the crimes enumerated therein for a period of sixty days, *see Tobal*, 51 V.I. at 161. Importantly, however, neither *Browne* nor *Tobal* held that section 3504a was abrogated in its entirety.

 An examination of the portions of the statute not abrogated by our prior decisions reveals that the Legislature provided therein for the manner in which pre-trial detention hearings are to be conducted. Specifically, subsection (b) provides as follows:

---

[10] The People correctly note that Congress has permitted the presentation of hearsay at pre-trial detention hearings conducted in federal courts. *See* 18 U.S.C. § 3142(f)(2)(B) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also United States v. Accetturo*, 783 F.2d 382, 390 (3d Cir. 1986) ("[W]e have recognized that Congress authorized the government to proceed by hearsay . . . ."). As we held in *Browne*, however, "the [Bail Reform Act] is not applicable to cases tried in the Superior Court except as provided for in Superior Court Rule 141[;] the appropriate provisions of the BRA merely guide trial judges with respect to the *release* of defendants pending trial, but not with respect to the *detention* of such defendants." 50 V.I. at 258 (emphasis in original).

(b) Hearing:

(1) How initiated. A pretrial detention hearing may be initiated on oral motion of the prosecuting attorney whenever a person described in subsection (a)(1) or (2) is before the court. If such person has previously been released, the prosecuting attorney may initiate a hearing by ex parte motion. Upon such motion, the court may issue a warrant for the arrest of such person.

(2) Time of hearing. The hearing shall be held immediately upon the person being brought before the court unless a continuance is granted. A continuance granted on the motion of the person shall not exceed five calendar days, unless there are extenuating circumstances. A continuance on motion of the prosecuting attorney shall be granted upon good cause shown and shall not exceed three calendar days. The person may be detained pending the hearing.

(3) Conduct of hearing. *The person shall be entitled to representation by counsel and shall be entitled to present information by proffer or otherwise, to testify, and to present witnesses in his own behalf. Rules pertaining to the admissibility of evidence in a court of law need not be followed.*

5 V.I.C. § 3504a(b) (emphasis added). Because our prior decisions have not abrogated 5 V.I.C. § 3504a(b), it continues to govern the conduct of pre-trial detention hearings in the Superior Court.

 ██ Significantly, the explicit language of section 3504a(b)(3) provides that the rules governing admissibility of evidence[11] need not be adhered to in pre-trial detention hearings. As a result, 5 V.I.C. §§ 931-935, which govern the admissibility of hearsay in local Virgin Islands courts, do not bar the admission of hearsay at pre-trial detention hearings. Accordingly, the trial court did not err in holding that the People's hearsay evidence was admissible.

---

[11] The Uniform Rules of Evidence, codified as 5 V.I.C. §§ 771-956, govern the admissibility of evidence in local Virgin Islands courts. *See Phillips v. People*, 51 V.I. 258, 273 (V.I. 2009).

## 2. When the People Present Exclusively Hearsay Evidence at Pre-trial Detention Hearings, the Trial Court Must Ascertain the Reliability of the Underlying Hearsay Statements

Having concluded that hearsay evidence is admissible at pre-trial detention hearings, we turn to the evidence presented by the People at Williams' pre-trial detention hearing to determine whether the People have met its burden of proving by clear and convincing evidence that Williams committed first degree murder. In particular, we must consider whether the exclusively hearsay evidence presented in this case satisfies the clear and convincing standard.

Faced with the government's reliance upon hearsay evidence at a pre-trial detention hearing, the First Circuit Court of Appeals aptly explained the reasoning behind the admissibility of hearsay evidence at such proceedings:

> [the] authority rests primarily upon the need to make the bail decision quickly, at a time when neither party may have fully marshalled all the evidence in its favor. It may also reflect the realization that at least some hearsay on some occasions may be fairly reliable, perhaps more reliable than certain direct evidence. For example, well-kept records, though hearsay, may be more reliable than eyewitness accounts of, say, a road accident on a foggy night. In any event, the need for speed necessarily makes arraignments, "probable cause" determinations, and bail hearings typically informal affairs, not substitutes for trial or even for discovery.

*United States v. Acevedo-Ramos*, 755 F.2d 203, 206 (1st Cir. 1985). Although courts permit hearsay evidence at pre-trial detention hearings, some courts strictly prohibit the government from relying solely upon hearsay evidence to meet its clear and convincing burden. For instance, the Colorado Supreme Court has held that:

> [d]enial of bail may not be predicated upon hearsay alone. There must be competent, direct evidence to support the denial. The hearsay evidence may be admitted in corroboration. We are moved to so hold because, except for the exception, a defendant has a constitutional right to bail in this state. A variance of that right should not be made lightly.

*Gladney v. District Court of Denver*, 188 Colo. 365, 535 P.2d 190, 192 (Colo. 1975). *See also Azadi v. Spears*, 826 So.2d 1020, 1020 (Fla. Dist. Ct. App. 2001) (holding that pre-trial detention orders are statutorily prohibited from being based exclusively upon hearsay).

Without going so far as to bar the exclusive use of hearsay evidence, several other courts have indicated that the clear and convincing standard will not ordinarily be met by hearsay evidence alone. *See, e.g., Lynch v. United States*, 557 A.2d 580, 582 n.6 (D.C. 1989) ("A trial judge may, of course, consider the hearsay character of the government's evidence in determining whether a clear and convincing showing has been made. The trial judge may, and in appropriate cases we are confident will, require that the hearsay evidence be buttressed by otherwise admissible evidence to meet the clear and convincing standard."); *Fisher*, 618 F. Supp. at 537-38 (clear and convincing standard not met because government offered only hearsay testimony, including triple hearsay, regarding an informant's statements and chose not to present the existing tape or transcript of the conversation); *United State v. Baldinger*, No: 3:85-00031, 1985 U.S. Dist. LEXIS 20029, at *19 n.9 (M.D. Tenn. May 8, 1985) ("While the rules of evidence do not apply at [detention] hearings, the use of exclusively hearsay testimony to support an extended detention without valid justification, particularly if the testimony is removed twice or thrice from its original source, runs a serious risk of failing to meet the high evidentiary standard of clear and convincing proof . . . ." (internal citation omitted)); *United States v. Hazzard*, 598 F. Supp. 1442, 1453 (N.D. Ill. 1984) ("It may well be that hearsay alone will rarely, if ever, satisfy the clear and convincing standard.").

█ This Court recognizes, as did the court in *Acevedo-Ramos*, that certain types of hearsay evidence, such as carefully-preserved records, may, in fact, be more reliable than direct eyewitness testimony. *See* 755 F.2d at 206. As a consequence, we are unwilling at this time to hold, as some courts have, that the clear and convincing standard can never be met by exclusively hearsay evidence. However, we find it significant that, in this case, the People did not introduce the type of hearsay evidence that might be considered as reliable or more reliable than direct evidence. In particular, the People did not present any of the underlying investigatory records or reports. In fact, the People did not introduce any *direct* testimony that was based upon personal observation. As discussed above, the People relied exclusively upon hearsay evidence, consisting only of

Detective Matthews's testimony regarding the statements and observations of others. Specifically, Detective Matthews testified concerning statements made to him by several witnesses, including W-1 and W-2, and by numerous officers[12] who had participated in the investigation of the shooting. Moreover, as illustrated by the colloquy above concerning Almanzo's cause of death, Detective Matthews testified on several occasions regarding statements made by witnesses to other officers who then conveyed the witnesses' statements to Detective Matthews. Thus, some of the People's evidence represented multiple layers of hearsay. *See United States v. Fisher*, 618 F. Supp. 536, 538 (E.D. Pa. 1985) (characterizing triple hearsay as involving "inherent human frailties of recollection"); *see also United States v. Bell*, 673 F. Supp. 1429, 1431-32 (E.D. Mich. 1987) (refusing to consider police officers' testimony regarding what other officers told them when making clear and convincing determination, but accepting personal observations of officers).

The record illustrates that, during cross-examination, Williams repeatedly questioned Detective Matthews concerning the reliability of W-2's statement identifying Williams as one of the individuals who shot Almanzo. Detective Matthews responded by indicating that he either did not know or could not recall what W-2 had told him concerning his ability to see the shooting. The following dialogue illustrates Williams' attempt to challenge the reliability of the hearsay underlying Detective Matthews's testimony:

Q: . . . what did [W-2] tell you the lighting conditions were where the shooting occurred?

A: I can't recall the question. I can't recall asking [W-2] that question.

Q: And [W-2] did not tell you that?

A: But based on other witnesses there [was] plenty of light there.

Q: . . . How far did [W-2] tell you he was away from the place where he saw Jalani Williams shooting at Almanzo Williams?

A: In the vicinity.

Q: Did [W-2] tell you what that distance was?

---

[12] On cross-examination, Detective Matthews indicated that at least seven other officers were involved in the investigation. (Hr'g Tr. 47.)

A: I can't recall the distance right now.

Q: Did [W-2] tell you how many people were between him and the incident[?]

A: I wouldn't know right now.

Q: And did [W-2] tell you how many automobiles were between him and the incident?

A: I don't know.

Q: So suffice it to say, that you can't give the court any information as to the ability of [W-2] to actually see what [W-2] said he saw; correct?

A: They said they were close enough to see what happened.

Q: So [W-2] did tell you the distance between him and the incident?

A: Close enough to see what happened.

(Hr'g Tr. 47-49.) Williams' line of questioning on this issue was ultimately interrupted by the People's objection that the testimony "is far afield for the purpose of this hearing as to whether, in fact, this is relevant or pertinent to making a determination as to detention." (Hr'g Tr. 49-50.) William protested that he lacked other means by which to challenge the reliability of the sole witness to identify him because the records underlying the investigation had been sealed. The trial court sustained the People's objection on grounds that a pre-trial detention hearing is not a trial and that guilt or innocence is not to be determined at that stage of the proceedings.

 From our evaluation of the hearing transcript, it appears that the trial court relied exclusively upon this Court's holding in *Browne* that the trial judge should not focus on the ultimate guilt or innocence of the defendant. *See* 50 V.I. at 262. While the judge's task is not to resolve the ultimate guilt or innocence of the defendant, which is determined beyond a reasonable doubt at trial, we made it clear in *Browne* that the trial court "should focus on the strength of the evidence offered by the People" when determining whether there is clear and convincing evidence that the defendant committed first degree murder. *Id.* Undoubtedly, a trial judge cannot conduct a meaningful assessment of the strength of the People's evidence without considering whether such evidence is reliable, especially where the evidence is comprised exclusively of hearsay. *See, generally,* 31A C.J.S. *Evidence* § 369 (2009) (noting that lack of trustworthiness is the concern underlying hearsay statements).

Significantly, other courts have declared that a trial judge must ascertain the reliability of the hearsay evidence presented by the government at a pre-trial detention hearing. For instance, in *United States v. Accetturo*, 783 F.2d 382, 389 (3d Cir. 1986), the Third Circuit Court of Appeals stated that "Congress' authorization of hearsay evidence does not represent a determination that such evidence is always appropriate. Nor does it relieve the judicial officer of his duty to require more when tendered hearsay evidence does not rise to the required level of reliability." Additionally, the Second Circuit Court of Appeals has stated that "while the informality of bail hearings serves the demands of speed, the magistrate or district judge must also ensure the reliability of the evidence, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (internal quotations omitted). Additionally, in its oft-quoted *Acevedo-Ramos* decision, the First Circuit Court of Appeals affirmed the need to test the reliability of the hearsay evidence even where the government has an interest in keeping its sources confidential. The court held that:

> the magistrate or judge possesses adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question. Through sensible exercise of this power of selection, the judicial officer can make meaningful defendant's right to cross-examine without unnecessarily transforming the bail hearing into a full-fledged trial or defendant's discovery expedition. In fact, even in an unusual case, where the government provides strong special reasons for keeping its evidentiary sources confidential (*e.g.*, protecting witness safety), the magistrate or judge, upon defendant's request, can still test the veracity of the government's testimony and the quality of the underlying evidence, by, for example, listening to tapes or reading documents *in camera*.

*Acevedo-Ramos*, 755 F.2d at 207-208 (emphases in original).

██ In the instant case, the above excerpts of Detective Matthews's testimony clearly demonstrate that the People attempted to meet its burden of proving that Williams committed first degree murder by presenting solely hearsay testimony. It is evident from our review of the

record that the trial judge failed to ascertain the reliability of any of the hearsay statements underlying Detective Matthews's statements before concluding the People had met its burden. As a consequence, the trial court did not properly focus on the strength of the People's evidence, as required by *Browne*. Furthermore, given the numerous instances in which the reliability of the underlying hearsay statements were called in question by Williams, we cannot conclude that the untested hearsay evidence presented by the People rose to the level of clear and convincing evidence. We also find it significant that Detective Matthews's testimony at the pre-trial detention hearing added little, if anything, to the statements offered in Detective Matthews's affidavit to establish probable cause for an arrest warrant and to support the Information. To hold in this case that Detective Matthews's repetition of the hearsay statements in his probable cause affidavit met the clear and convincing standard in this case would in effect be setting a precedent that would permit the People to detain a defendant without bail upon the showing of mere probable cause that the defendant committed first degree murder. However, as we explained in *Browne*, a probable cause standard " 'add[s] nothing to the accused's rights since a suspect may not be held without a showing of probable cause in any instance.' " 50 V.I. at 262 (quoting *Fountaine v. Mullen*, 366 A.2d 1138, 1141 (R.I. 1976).

 We emphasize that defendants charged with crimes in local Virgin Islands courts have a constitutional right to bail in sufficient sureties, with the sole exception being where the proof is evident or the presumption great that the defendant committed first degree murder. *See* ROA § 3. As the United States Supreme Court expounded in *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987), "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." To allow Virgin Islands defendants to be detained pending trial solely upon the presentation of potentially unreliable hearsay testimony would impermissibly chip away at the constitutional right to liberty.

 Accordingly, we conclude that the hearsay evidence presented by the People at the October 26, 2009 pre-trial detention hearing does not establish clear and convincing evidence that Williams' committed first degree murder. We hold that, when the People elect to present exclusively hearsay evidence at a pre-trial detention hearing, the trial court, when determining whether the evidence is clear and convincing, must undertake

by whatever means are appropriate under the circumstances to ascertain the reliability of the underlying hearsay statements when their accuracy is in question.

## III. CONCLUSION

■■ ■■ This Court holds that the valid provisions of 5 V.I.C. § 3504a(b) continue to govern the conduct of pre-trial detention hearings in local Virgin Islands courts. Additionally, because the trial court in this case did not ascertain the reliability of the hearsay statements underlying the People's exclusively hearsay evidence, the trial court erred in concluding that the evidence was clear and convincing that Williams' committed first degree murder. Accordingly, we reverse the Superior Court's November 25, 2009 pre-trial detention order and remand to the Superior Court with instructions to conduct a new pre-trial detention hearing in accordance with our holdings herein in order to determine whether Williams should be detained pending trial. *See United States v. Kikumura*, 918 F.2d 1084, 1103 n.23 (3d Cir. 1990), *overruled on other grounds by*, *United States v. Grier*, 449 F.3d 558 (3d Cir. 2006) ("Whenever an appellate court creates a new test, it is normally preferable to remand the case so that the trial judge can apply the proper legal standard to the facts in the first instance.").