**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**MILES DAVID, Defendant**

Case No. SX-10-CR-215

Superior Court of the Virgin Islands

Division of St. Croix

May 7, 2010

KIPPY ROBERSON, ESQ., Assistant Attorney General, Department of Justice, USVI, *Attorney for Plaintiff*.

H. HANNIBAL O'BRYAN, ESQ., Territorial Public Defender, USVI, *Attorney for Defendant*.

WILLOCKS, *Judge*

## MEMORANDUM OPINION

(May 7, 2010)

**THIS MATTER** came before the Court for a Detention Hearing on April 28, 2010, on the issue of whether Defendant should be detained pending trial in the above-captioned matter.

## FACTS

On or about April 23, 2010, at approximately 4:00 p.m., in the vicinity of #291 Estate Peter's Rest, St. Croix, U.S. Virgin Islands, an argument ensued between Defendant Miles David, Ms. Lorraine Joseph, and Ms. Alorra Tutien. The argument escalated into a physical altercation between the parties. Shortly after, Ms. Lorraine Joseph and Ms. Alorra Tutien sustained gunshot wounds. Ms. Lorraine Joseph sustained several gunshot wounds around the neck area. Ms. Alorra Tutien, who was pregnant, sustained gunshot wounds to the facial area and under the left armpit. The Emergency Medical Technicians on the scene found no vital signs of Ms. Lorraine Joseph or Ms. Aiorra Tutien, nor could the baby be saved. Defendant was arrested and charged with the crimes of Murder in the First Degree, Reckless Endangerment, Unauthorized Possession of a Firearm and Carrying or Using a Dangerous Weapon During the Commission of a Crime of Violence in connection to the April 23, 2010 incident. On April 26, 2010, Defendant was advised of his rights and probable cause was found for Defendant to be charged with Murder in the First Degree, Reckless Endangerment, Unauthorized Possession of a Firearm and Carrying or Using a Dangerous Weapon During the Commission of a Crime of Violence in connection to the April 23, 2010 incident. At the Advice of Rights Hearing, the People moved orally as well as written for a detention hearing.

## DISCUSSION

██ ██ The Supreme Court of the Virgin Islands recently held that Section 3 of the Revised Organic Act of 1954 (hereinafter "ROA") governs "pretrial detention for defendants charged with first degree murder." *People v. Browne*, 50 V.I. 241, 258-59 (V.I. 2008). The Supreme Court of the Virgin Islands further held that "[o]nce a trial judge establishes that a defendant has been charged with first degree murder, the judge's next task is to determine from the facts before him whether the proof is evident (or presumption great) that the defendant committed first degree murder. A trial judge may detain a first degree murder defendant pending trial only if the judge finds in the affirmative." *Id.* (citing ROA, § 3).

██ The People have the burden to prove that the proof is evident or presumption is great that a defendant committed first degree murder

176

before the defendant can justifiably be detained pending trial. *Id.* " '[T]he proof is evident or the presumption is great' evidentiary standard requires something more than probable cause but less than beyond a reasonable doubt. More specifically, *a trial judge must find clear and convincing evidence that the defendant committed the offense for which he is before the court* prior to detaining a first degree murder defendant pursuant to section 3 of the ROA." *Id.* at 263 (internal citation omitted) (emphasis added). Thus, "a trial judge should focus on the strength of the evidence offered by the People rather than the ultimate guilt or innocence of the defendant." *Id.* (citation omitted).

On April 28, 2010, Defendant appeared before the Court for a Detention Hearing. At that hearing, the Court considered whether there is clear and convincing evidence that Defendant committed the act(s) of murder in the first degree, as articulated in the Supreme Court's decision in *People v. Browne*. The Court is cognizant that the burden is on the People. This burden is a higher burden than probable cause but a lesser burden than reasonable doubt. The People argue that Defendant is not entitled to release because the proof is evident and the presumption is great that he committed murder in the first degree.[1]

At the Detention Hearing, the People called Detective Jose Silva, Sergeant Dino Herbert and Detective Gregory Charlery to testify. All three officers were called to the scene shortly after the shootings took

---

[1]   **14 V.I.C. § 921. Murder defined**
Murder is the unlawful killing of a human being with malice aforethought.
**14 V.I.C. § 922. First and second degree murder defined**
(a) All murder which

(1) is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing;

(2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny; or

(3) is committed against (A) an official, law enforcement officer, or other officer or employee of the Government of the Virgin Islands while working with law enforcement officials in furtherance of a criminal investigation (i) while the victim is engaged in the performance of official duties; (ii) because of the performance of the victim's official duties; or (iii) because of the victim's status as a public servant; or (B) any person assisting a criminal investigation, while that assistance is being rendered and because it is first degree murder;

is murder in the first degree.

place. They testified to what they observed personally and to statements made to them by eyewitnesses. Detective Jose Silva interviewed Witness 3 (hereinafter "W-3"), Sergeant Dino Herbert interviewed Witness 1 (hereinafter "W-1") and Witness 2 (hereinafter "W-2"). and Detective Gregory Charlery interviewed Witness 4 (hereinafter "W-4").

According to Detective Jose Silva's testimony, W-3 told him that she witnessed the altercation on the road from her porch which was about 15 to 20 feet away with an unobstructed view. At one point, W-3 saw Defendant went to his house and came back with a firearm. W-3 saw Defendant point the gun at Ms. Lorraine Joseph's head. W-3 did not actually see anyone get shot firsthand but heard multiple shots being fired. Upon hearing the shots, W-3 stepped out of the house and saw Ms. Lorraine Joseph against the fence with Chantel trying to assist her. W-3 believes Ms. Lorraine Joseph sustained shots to the neck. W-3 saw Ms. Lorraine Joseph take a deep breath and fall to the ground.

Sergeant Dino Herbert testified that W-1 and W-2 told him the following. According to W-1, she observed Defendant with a firearm in his hand as he went past her dwelling. W-1 observed Defendant discharge two shots into the air as he walked towards the street area. W-1 was inside of her dwelling, so she did not see Defendant shoot either Ms. Lorraine Joseph or Ms. Alorra Tutien. However, upon hearing shots being fired, W-1 came outside and saw that Ms. Lorraine Joseph and Ms. Alorra Tutien were shot. W-1 noted that Defendant's weapon was silver, but she didn't know what type of weapon it was.

According to W-2, W-2 went and looked outside and saw Defendant, Ms. Lorraine Joseph, and Ms. Alorra Tutien involved in an argument. At one point, W-2 saw Defendant indicate to her that he's going to kill all of them and proceeded to his dwelling and came back with a firearm. W-2 then observed Defendant discharging two shots in the air prior to coming towards them and pointing the weapon at them. W-2 described the weapon to look like a BB gun but it had a long pistol, "like a long weapon." W-2 does not remember how many shots Defendant discharged, but she "remembers hearing one shot [fired] into her sister (Ms. Lorraine Joseph)". W-2 saw Ms. Lorraine Joseph holding her chest area up by the neck and having problems breathing. W-2 did not witness the shooting of either Ms. Lorraine Joseph or Ms. Alorra Tutien, but she was behind Ms. Lorraine Joseph when the shots were fired into Ms. Lorraine Joseph and Ms. Alorra Tutien.

Detective Gregory Charlery testified that W-4 gave the following statements. According to W-4, W-4 saw the altercation involving Defendant, Ms. Lorraine Joseph, and Ms. Alorra Tutien. At one point, W-4 observed Defendant walk back to his dwelling and heard Defendant fire two shots into the air before proceeding to the front of the residence and waiving the gun in Ms. Lorraine Joseph's face, stating "I gon kill ayo. I gon kill ayo." W-4 saw Ms. Lorraine Joseph walk away to her car to use her cell phone, but then another argument ensued between Defendant and Ms. Lorraine Joseph. Subsequently, W-4 witnessed Defendant shoot Ms. Lorraine Joseph at her collarbone. W-4 saw Ms. Lorraine Joseph stagger away, taking some deep breaths to try to catch herself but eventually fell to the ground. W-4 did not see Ms. Alorra Tutien get shot because W-4 had left to go to call 911. W-4 noted that, after Ms. Lorraine Joseph was shot, W-4 observed Defendant walking away with a silver or gray-color gun with a long mouth.

In addition to the officers' accounts of W-1, W-2, W-3 and W-4, the officers also testified to their personal observations and examinations of the crime scene and the victims. Furthermore, they also availed themselves to cross-examination by the Defense. The evidence at the crime scene corroborates the information given by the officers. Accordingly, the Court finds the evidence presented by the People to be reliable.[2]

---

[2] The Legislature enacted Title 5, Section 3504a of the Virgin Islands Code to govern pretrial detention. Although the Supreme Court has previously found certain parts of Section 3504a inapplicable under certain circumstances, such as in *Browne*, the Supreme Court clarified in *People v. Williams* that Section 3504a was never abrogated in its entirety. 2010 V.I. Supreme LEXIS 14, *17 (V.I. April 19, 2010). In *Williams*, the Supreme Court determined that, under Title 5, Section 3504a, subsection (b)(3) of the Virgin Islands Code, hearsay is permitted at pretrial detention hearings in local Virgin Islands courts. *Id.* Title 5, Section 3504a. subsection (b)(3) of the Virgin Islands Code provides as follows:

Conduct of hearing. The person shall be entitled to representation by counsel and shall be entitled to present information by proffer or otherwise, to testify, and to present witnesses in his own behalf. *Rules pertaining to the admissibility of evidence in a court of law need not be followed.* (Emphasis added).

In *Williams*, the People presented exclusively hearsay evidence — relied exclusively on the detective's testimony regarding statements and observations of witnesses made to him, and in several occasions, made by witnesses to other officers who then conveyed the witnesses' statements to him — to satisfy its burden to prove by clear and convincing evidence that the defendant committed first degree murder. The Supreme Court looked at the reliability of the evidence presented in *Williams*, and stated the following:

Based on the evidence presented before the Court, the Court finds as follows:

1. On or about April 23, 2010, the police responded to an investigation of homicides in the vicinity of #291 Estate Peter's Rest. St. Croix, U.S. Virgin Islands, that occurred at approximately 4:00 p.m., which was the time the offense was reported.

2. There was an argument involving Defendant, Ms. Lorraine Joseph, and Ms. Alorra Tutien, that escalated into a physical altercation.

3. Investigation of the incident revealed that two victims, Ms. Lorraine Joseph and Ms. Alorra Tutien, sustained multiple gunshot wounds.

4. The Emergency Medical Technicians arrived on the scene shortly after and pronounced Ms. Lorraine Joseph and Ms. Alorra Tutien dead.

5. Ms. Alorra Tutien was pregnant at the time, and the baby could not be saved.

6. W-1, W-2, W-3 and W-4 are all related to Defendant and familiar with Defendant prior to incident.[3]

7. W-2 said she heard Defendant threaten to kill them all.

8. W-1 W-2, W-3 and W-4 all observed Defendant carrying a firearm after he re-emerged from his house.[4]

---

[W]e find it significant that, in this case, the People did not introduce the type of hearsay evidence that might be considered as reliable or more reliable than direct evidence. In fact, the People did not introduce any *direct* testimony that was based upon personal observation . . . We hold that, when the People elect to present exclusively hearsay evidence at a pretrial detention hearing, the trial court, when determining whether the evidence is clear and convincing, must undertake by whatever means are appropriate under the circumstances to ascertain the reliability of the underlying hearsay statements when their accuracy is in question. *Williams*, at *24.

[3] Defendant is W-1's brother. Defendant is uncle to W-2, W-3 and W-4.

[4] They all had a clear, unobstructed view of Defendant, Ms. Lorraine Joseph and Ms. Alorra Tutien. W-1 observed Defendant with a firearm in his hands as he went past her dwelling. W-2 was at W-1's dwelling when W-2 observed the altercation that took place in the street in front of W-1's dwelling. W-2 also heard Defendant threatening Ms. Lorraine Joseph and Ms. Alorra Tutien that he is going to kill all of them and proceeded to his dwelling and came back with a firearm in his hand. Defendant's dwelling is located approximately 175 feet to the vehicle where Ms. Alorra Tutien's body was found. W-2 was standing behind

9. W-1 W-2 and W-4 all heard Defendant fire two shots as he approached.

10. Subsequently, W-1, W-2, W-3 and W-4 all heard multiple shots being fired.

11. W-2 did not witness the shooting of either Ms. Lorraine Joseph or Ms. Alorra Tutien, but W-2 was behind Ms. Lorraine Joseph when the shots were fired into Ms. Lorraine Joseph and Ms. Alorra Tutien.

12. W-4 had an unobstructed view and observed Defendant shooting Ms. Lorraine Joseph.

13. The officers were able to locate and detain Defendant near the premises after they arrived on the scene.

14. Defendant invoked his Fifth Amendment rights; and without any questioning, Defendant uttered in the presence of Sergeant Herbert that he is sorry they are dead, but they shouldn't have hit him with a machete, so he had to shoot them.

15. During the processing at #291 Estate Peter's Rest, the casings collected by the Forensic Unit near the crime scene were consistent with the weapon recovered from Defendant's dwelling.

■ In summary, there are several major factors that support a finding that the People has proven by clear and convincing evidence that Defendant committed the offense of murder in the first degree.

First, several eyewitnesses heard Defendant threatening Ms. Lorraine Joseph and Ms. Alorra Tutien and subsequently observed Defendant waiving a gun and shooting at Ms. Lorraine Joseph and Ms. Alorra Tutien. These eyewitnesses were all related to Defendant and familiar with Defendant prior to the incident.

Second, Detective Jose Silva. Sergeant Dino Herbert, and Detective Gregory Charlery responded to a call-for-service in the vicinity of #291 Estate Peter's Rest and found the bodies of Ms. Lorraine Joseph and

---

Ms. Lorraine Joseph when she heard the shots fired into Ms. Lorraine Joseph and Ms. Alorra Tutien. W-3 was sitting on the porch, approximately 15 to 20 feet from where the altercation took place. W-4 was in the back of the yard at first, which was approximately 75 to 100 feet away from the front of the yard. W-4 later moved to the porch, which is about 15 to 20 feet from the altercation and the fence where Ms. Lorraine Joseph's body was found.

Ms. Alorra Tutien with multiple gunshot wounds to the upper body. The Emergency Medical Technicians arrived on the scene shortly after and pronounced Ms. Lorraine Joseph and Ms. Alorra Tutien dead and were unable to save Ms. Alorra Tutien's baby.

Third, the officers immediately located and detained Defendant near #291 Estate Peter's Rest.

Fourth, during the processing at #291 Estate Peter's Rest, the Forensic Unit recovered and collected the weapon Defendant showed the police. The Forensic Unit also collected spent casings in front of #291 Estate Peter's Rest in the proximity of the crime scene. The casings were consistent with the weapon recovered from Defendant's dwelling.

Fifth, Defendant invoked his Fifth Amendment rights; and without any questioning by the officers, Defendant spontaneously uttered in the presence of Sergeant Herbert that he is sorry they are dead, but they shouldn't have hit him with a machete, so he had to shoot them.

In light of the foregoing factual findings, the Court finds that the People has met its burden to present clear and convincing evidence that Defendant committed the crime of murder in the first degree.

## CONCLUSION

The Court finds that, in accordance with standard set in *People v. Browne*, there is clear and convincing evidence that Defendant committed the crime of murder in the first degree. Therefore, in accordance with Section 3 of the ROA, Defendant shall be detained pending trial or changed circumstances.