**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
v.
**MAJOR LEE WOMACK, Defendant**

Criminal Case No. SX-15-CR-106
Superior Court of the Virgin Islands
Division of St. Croix
June 8, 2015

BRADY, *Judge*

## MEMORANDUM OPINION AND ORDER

(June 8, 2015)

THIS MATTER is before the Court on the People's Motion to Detain Defendant and Supporting Memorandum, filed April 15, 2015 ("Motion"). The Motion came on for hearing on April 15, 2015 ("Hearing"). The People presented as witnesses at the Hearing investigating Virgin Islands Police Department Lieutenant Dino Herbert and Egbert V. Thomas, III, son of the deceased victim. Defendant was personally present at the Hearing and represented by counsel, but presented no evidence. Following the Hearing, the Court gave Defendant two weeks within which to file a written response to the Motion, on or before April 29, 2015, following which the People could reply on or before May 6, 2015. Defendant has filed no response in opposition to the Motion.

■ Pursuant to the Virgin Islands Bill of Rights (Revised Organic Act of 1954, § 3; 48 U.S.C. § 1561), all persons accused of a crime are bailable, "except for first degree murder or any capital offense when the proof is evident or the presumption is great." *See Tobal v. People of the Virgin Islands*, 51 V.I. 147, 160 (V.I. 2009). The Supreme Court of the Virgin Islands has interpreted this language to require that the burden of proof rests on the People to prove by clear and convincing evidence that Defendant committed the crime of first degree murder. *Browne v. People of the Virgin Islands*, 50 V.I. 241, 260-63 (V.I. 2008). In reviewing the evidence presented, "the trial judge should focus on the strength of the People's evidence rather than the defendant's ultimate guilt or innocence, and may not resolve direct conflicts as to inculpatory and exculpatory facts." *Williams v. People of the Virgin Islands*, 53 V.I. 514, 522 (V.I. 2010), citations omitted.

At the Hearing, Detective Herbert, a 23 year veteran of VIPD, with seven years in the Major Crimes (Homicide) Division, testified that he has investigated close to 200 homicides, and by training and experience is

familiar with observing blood and dead bodies at crime scenes. Having received a call on Sunday morning March 22, 2015, Detective Herbert traveled to the Christiansted Cemetery, arriving at approximately 9:45 a.m. He personally observed the apparently lifeless body of the victim, lying on the ground between two cemetery vaults, with apparent multiple stab wounds and no shoes on his feet. In the victim's right forearm, Detective Herbert observed a broken steak knife blade. EMT officers had already arrived at the scene and Detective Herbert testified that, from his observation and based upon his experience, the victim appeared to be dead. Detective Herbert further testified that he observed socks on the ground adjacent to the victim, and a trail of various items and blood spatters from the body leading to a structure approximately 60 feet away. That structure was secured in front but the side window featured broken louvers and cut metal bars. Outside the structure, a dog was tied with dog food nearby. Detective Herbert was able to see clearly inside the structure through the broken louvers and bars. He observed a Bible, clothing, black shoes and a broken stick covered with what appeared to be blood.

Forensic officers later that morning used bolt cutters to gain access to the structure, from which they retrieved the referenced items, plus additional items, including a layaway receipt from S B Jewelers dated "02/27/2015" for a gold ring "sold to Major Lee." A photograph of the receipt was admitted into evidence as Hearing Exhibit 1. Also retrieved from the structure was a wallet that contained within it several items of identification for Egbert V. Thomas, Jr. A photograph of ten different identification cards retrieved from inside the wallet (i.e. Virgin Islands Driving License; Social Security; Medicare; Veteran's Universal Access Identification; Department of Human Services Senior Citizen; Medical Air Services Association; AARP; and three Cigna Health Insurance cards), was admitted into evidence as Hearing Exhibit 2.

Detective Herbert further testified that he interviewed a witness (W1) who stated that as he walked home through the Christiansted Cemetery on Sunday morning March 22, 2015, he observed a tall slim black male standing over a bloody body lying on the ground approximately 30 feet away from where W1 was walking. When the black male noticed him, the black male stated: "Leave or you'll be next." W1 advised Detective Herbert that he recognized the black male as a person who always had a brown dog with him. On that morning, W1 stated, a dog was tied to the structure in the vicinity of where the black male was standing over the

body on the ground. W1 later selected a photograph of Defendant from an array of six photographs as the person he saw standing over the body on the ground who told him to leave the area.

Detective Herbert also interviewed a second witness (W2) who stated that on Sunday morning, March 22, 2015, he observed a black male wearing a tank top shirt and camouflage short pants using an object to strike a person on the ground. W2 stated that he told the attacker to stop, then called 911 and awaited the arrival of police. W2 subsequently identified Defendant from six different photographs in an array as the person he saw striking the victim. Forensic officers collected from the structure in the cemetery a pair of short pants matching the description given by W2 with apparent bloodstains.

At the Hearing, Detective Herbert identified Defendant as the same person selected by W1 and by W2 in the two separate photo arrays.

Detective Herbert testified that he spoke later with VIPD Detective Kai Joseph who assisted at the crime scene on March 22, 2015. Detective Joseph told Detective Herbert that prior to Defendant's arrest on March 23, 2015, Detective Joseph spoke with Defendant, who made a "spontaneous utterance" to the effect that the victim was getting too close to his property and that he had to deal with him. A witness had previously told Detective Joseph that Defendant stays in the structure from which forensic officers removed the items admitted as Exhibits 1 and 2. Detective Joseph further advised Detective Herbert that Defendant's "spontaneous utterance" included the statement that "from small, I always wanted to be a murderer. Now I am one."

An intake photograph of Defendant at VIPD was admitted as Hearing Exhibit 3. That photograph reflects Defendant wearing a silver colored stretch watch on his right wrist. That watch was taken from Defendant and two photographs of the watch were admitted as Hearing Exhibit 4. Detective Herbert testified that a member of the victim's family asked police about the victim's watch and described it as a "stretch watch silver." Following that description, a photograph of the watch was shown to the family member who identified the watch and began to cry.

The son of the victim, Egbert V. Thomas, III, testified that his father visited the grave site of his deceased wife, the witness's mother, every Sunday morning for more than eight years. Mr. Thomas testified that he has been to the cemetery many times and that his mother's grave site is located approximately 30 feet from the structure from which forensic

officers retrieved items of evidence. Mr. Thomas identified the watch displayed in Hearing Exhibit 4 as his father's watch.

■ Unlike *Williams*, where "the People did not introduce any *direct* testimony that was based upon personal observation,"[1] Detective Herbert testified concerning his personal observations at the scene of the incident and of the witnesses' positive identifications of Defendant, in addition to relating hearsay statements of witnesses at the scene and Police Detective Joseph. In reviewing the detention Hearing evidence, "the trial court should focus on the strength of the evidence offered by the People when determining whether there is clear and convincing evidence that the defendant committed first degree murder." *Williams v. People*, 53 V.I. at 530 (*quoting Browne v. People*, 50 V.I. at 262).

■ In reviewing hearsay evidence presented by the People, "the trial court, when determining whether the evidence is clear and convincing, must undertake by whatever means are appropriate under the circumstances to ascertain the reliability of the underlying hearsay statements when their accuracy is in question." *Williams v. People*, 53 V.I. at 532-33.

Here, hearsay evidence presented by the People includes the statements of W1 and W2 made to Detective Herbert; identification of the victim's watch by a family member; and the statements of Detective Joseph to Detective Herbert relaying the fruits of his investigation. The purported "spontaneous utterances" of Defendant described to Detective Herbert by Detective Joseph may (or may not) constitute hearsay. Because the People's evidence does not consist exclusively of hearsay testimony, the Court's determination is not based solely upon the reliability of such hearsay testimony. Nonetheless, it is noteworthy that the reliability of the hearsay statement of W1 to Detective Herbert to the effect that the black male who threatened him to leave the area as he stood over the victim's body is always accompanied by a dog was buttressed by the fact that a dog was found tied to the structure from which evidence was retrieved. The hearsay statement of W2 to Detective Herbert that the assailant wore a pair of camouflage short pants is deemed more reliable because a similar pair of pants with apparent blood stains was located in the structure adjacent to the location of the assault. The identification by a family

---

[1] *Williams v. People of the Virgin Islands*, 53 V.I. at 528, emphasis in original.

member of a photograph of the victim's watch worn by Defendant when he was arrested (Hearing Exhibit 3) is deemed reliable by the Hearing testimony of the victim's son who positively identified Hearing Exhibit 4 as two photographs of his father's watch. The double hearsay statement of an individual to Detective Joseph as related by Detective Herbert to the effect that Defendant stayed in the structure is more reliable in light of the fact that a receipt bearing Defendant's first two names (Hearing Exhibit 1) was retrieved from the same structure. For purposes of determining whether the People's proof at the Hearing rises to the level of clear and convincing evidence, the Court does not consider the "spontaneous utterances" Defendant allegedly made to Detective Joseph to which Detective Herbert testified.

The reliable hearsay testimony related by Detective Herbert is consistent with his testimony as to his personal observations at the scene, including the location of the deceased victim in proximity to the structure linked to Defendant from which evidence was retrieved, and the evidence he viewed inside that was eventually retrieved from the structure. Detective Herbert's testimony that W1 and W2 each identified Defendant as the perpetrator in separate photo arrays and the testimony of the victim's son identifying Hearing Exhibit 4 as two photographs of his father's watch further support the People's allegations that Defendant committed murder in the first degree.

Focusing on the strength of the People's evidence as a whole, rather than Defendant's ultimate guilt or innocence, and without resolving any direct conflicts as to inculpatory and exculpatory facts, the Court finds that the People has established by clear and convincing evidence that Defendant committed the crime of first degree murder. As such, because the proof is evident or the presumption great, Defendant is subject to pretrial detention in this matter pursuant to Section 3 of the Revised Organic Act and Virgin Islands law. On the basis of the foregoing, it is hereby

ORDERED that the People's Motion is GRANTED, and Defendant shall be DETAINED prior to trial in this matter; and it is further

ORDERED that a copy of this Order be served on the appropriate parties forthwith.