**RUBEN RIVERA-MORENO, Appellant/Petitioner**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee/Respondent**

S. Ct. Civil No. 2014-0010
Supreme Court of the Virgin Islands
September 26, 2014

283

VENETIA H. VELAZQUEZ, ESQ., Appellate Public Defender, St. Croix, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(September 26, 2014)

HODGE, *Chief Justice*. Appellant Ruben Rivera-Moreno appeals from the Superior Court's January 9, 2014 order, which denied his petition for writ of habeas corpus with prejudice. For the reasons that follow, we reverse and direct the Superior Court, on remand, to grant the habeas corpus petition and order a new trial, if the Government be so advised, for first-degree murder, assault with a deadly weapon, and unauthorized possession of a firearm during a crime of violence.

## I. BACKGROUND

On January 28, 1991, the Government of the Virgin Islands and the United States of America each filed a criminal complaint against Rivera-Moreno in the United States District Court of the Virgin Islands, charging him, respectively, with first-degree murder in violation of title 14, section 922 of the Virgin Islands Code, and for possessing and transporting a firearm while facing felony charges in an unrelated federal case, in violation of title 18, section 922(n) of the United States Code.[1] While those charges were pending, Rivera-Moreno escaped from custody,

---

[1] As we later discuss in greater detail, prior to January 1, 1994, the Superior Court lacked jurisdiction under the Revised Organic Act of 1954 to hear first-degree murder cases, and such matters were tried in the federal District Court. *See* Former 4 V.I.C. § 76(b) (repealed 1994). The Superior Court attained such jurisdiction only in 1994, when

> the Revised Organic Act of 1954 had been implemented to include the sweeping 1984 Amendments, which authorized the local legislature to confer expanded jurisdiction on the [Superior] Court. The 1984 Amendments were not self-executing . . . . Thus, local legislation, effective January 1, 1994, codified the transfer of original jurisdiction for all criminal matters, subject to concurrent jurisdiction with the District Court, to the [Superior] Court.

*Simon v. Joseph*, 59 V.I. 611, 614 n.4 (V.I. 2013) (quoting *People v. Dowdye*, 48 V.I. 45, 64-65 (V.I. Super. Ct. 2006)). However, even today, the Revised Organic Act provides that the District Court possesses original jurisdiction to try violations of Virgin Islands criminal laws if the Virgin Islands offenses relate to a federal offense. 48 U.S.C. § 1612(c).

but was later apprehended. On June 11, 1991, a grand jury issued a superseding indictment.[2] In addition to again charging him with first-degree murder and possession of a firearm while facing felony charges, the superseding indictment also charged Rivera-Moreno with assault with a deadly weapon in violation of title 14, section 297(2) of the Virgin Islands Code, unauthorized possession of a firearm during the commission of a crime of violence in violation of title 14, section 2253(a) of the Virgin Islands Code, and escape from the custody of the United States in violation of title 18, section 751(a) of the United States Code.

The trial of Rivera-Moreno and his co-defendant, Harold Oveson, began in the District Court on October 10, 1991. After resolving some other pre-trial matters not relevant to this appeal, the District Court proceeded to jury selection. During *voir dire*, the judge asked the prospective jurors if any of them recognized Rivera-Moreno, if "anyone [was] personally acquainted with [him]," and if "anyone of the jurors know of any reason why they could not sit on a jury on a case involving [him]." (J.A. 70.) Several prospective jurors, including Juror No. 173, indicated that they either knew or had heard of Rivera-Moreno prior to trial, and each was questioned by the judge as to the nature and extent of that prior relationship or knowledge. When he was questioned, Juror No. 173 engaged in the following colloquy with the judge:

> THE COURT: All right. . . . Number 173. Good afternoon.
> JUROR NO. 173: Yes, in my mind, I feel that they're guilty.
> THE COURT: Well, are you telling me that you made up your mind?
> JUROR NO. 173: Yes.
> THE COURT: In other words, you could not[,] were you chosen as a juror, sit in this jury box with an open mind and decide this case fairly and impartial[ly] and solely on the basis of the testimony and the evidence produced in this courtroom? You couldn't do that?
> JUROR NO. 173: Right.

---

[2] While the Revised Organic Act of 1954 does not require a grand jury indictment and explicitly authorizes prosecution by information, *see Simmonds v. People*, 59 V.I. 480, 491 (V.I. 2013), it is well established that the Government may, at its discretion, choose to prosecute an offense by indictment, even if it is not mandated to do so. *See United States v. Ntreh*, 279 F.3d 255, 258 (3d Cir. 2002) ("[F]ederal criminal prosecutions in the District Court of the Virgin Islands may be commenced by indictment or by information.") (citing 48 U.S.C. § 1614(b)).

THE COURT: I'll excuse you.
JUROR NO. 173: Thank you.

(J.A. 75.)

After striking Juror No. 173 and several other prospective jurors for cause, the District Court directed the remaining prospective jurors to sit down, in preparation for the parties' peremptory challenges. However, the prosecutor and counsel for Rivera-Moreno's co-defendant informed the judge that several of the prospective jurors that were excused remained in the courtroom. In response to these claims, the judge simply announced that "[a]ll those people that have been excused may leave, if you don't mind," (J.A. 96), and continued with jury selection without any further inquiry. Nevertheless, Juror No. 173 and several other previously excused prospective jurors remained in the courtroom.[3]

The District Court proceeded to select twelve jurors and four alternates. However, when calling the jurors to take their seats and have the oath administered, the court clerk placed Juror No. 173 on the jury despite the judge having earlier excused him for bias:

> THE CLERK: As I call your name the other jurors please take seats. Juror number 161 . . . take seat number three. Juror number 48 . . . take seat number four. Juror number 180 . . . take seat number 6. Juror number 42, . . . take seat number eight. *Juror number 173 . . . , take seat number nine.* Juror number 89 . . . take seat number 11. Juror number 170 : . . . take seat number 12.

(J.A. 170 (emphasis added).) Neither the judge nor counsel for any of the parties noticed that Juror No. 173 had been placed on the jury despite the judge having earlier excused Juror No. 173 for bias. The previously excused

---

[3] As Rivera-Moreno correctly notes in his brief, the jury selection transcript is replete with incidents of prospective jurors remaining in the courtroom despite being excused for cause. Juror No. 65 was excused for knowing one of the prosecution witnesses, yet was specifically identified by one of the attorneys as remaining in the room. Juror No. 144, who had been excused for knowing Rivera-Moreno's counsel, was excused a second time shortly thereafter for knowing the co-defendant's attorney. Similarly, despite Juror No. 69 having been excused for knowing one of the attorneys, the juror remained in the room notwithstanding the judge's request for all excused jurors to leave, and did not leave until one of the attorneys noted that she had been excused when the clerk identified her as an eligible juror.

Juror No. 173 was eventually seated on the jury as Juror No. 9. The clerk administered the juror oath to Juror No. 173 and the other jurors shortly thereafter.

The empaneled jury heard evidence from October 11, 1991, to October 16, 1991. The jury found Rivera-Moreno guilty of all charges, and the signed verdict form indicates that Juror No. 173 did in fact sit on the jury. The District Court orally sentenced Rivera-Moreno on December 6, 1991, to life imprisonment on the first-degree murder charge, five years imprisonment for assault in the third degree, and ten years imprisonment on the local firearm charge. As to the two federal charges, the District Court sentenced him to five years imprisonment on each count, to run consecutive to each other and concurrent with the local charges. The District Court memorialized its decision in a December 18, 1991 judgment and commitment.

Rivera-Moreno appealed his convictions to the United States Court of Appeals for the Third Circuit. On direct appeal, Rivera-Moreno raised numerous issues in his appellate brief, but did not argue that Juror No. 173 was wrongfully placed on the jury. The Third Circuit found no error and affirmed the December 18, 1991 judgment and commitment in a January 20, 1993 unpublished opinion. *United States v. Rivera-Moreno*, 28 V.I. 547 (3d Cir. 1993).

Almost fifteen years after the Third Circuit resolved his direct appeal, Rivera-Moreno attempted to file a *pro se* petition for writ of habeas corpus with the Clerk of the Superior Court. In that petition, Rivera-Moreno raised numerous issues, including the fact that Juror No. 173 sat on his jury despite having been excused for bias. Rivera-Moreno explicitly requested relief pursuant to the Virgin Islands habeas corpus statute, 5 V.I.C. §§ 1301 to 1325.

Although the Clerk of the Superior Court received Rivera-Moreno's petition on December 13, 2007, docketing of the petition was refused. As a result, Rivera-Moreno filed an identical habeas corpus petition with the District Court on January 14, 2008, and on February 23, 2009, filed a petition for writ of mandamus with the District Court requesting that it order the Clerk of the Superior Court to perform the ministerial duty of docketing his habeas corpus petition. On June 16, 2009, the Clerk of the District Court transmitted Rivera-Moreno's mandamus petition to this

Court, noting that it no longer handled such matters.[4] After various proceedings to ascertain that the Clerk of the Superior Court had, in fact, been served with the petition, this Court, in a January 27, 2010 order, directed the Clerk to file an answer. Shortly thereafter, the Clerk notified this Court that Rivera-Moreno's habeas corpus petition had been docketed as Super. Ct. Civ. No. 111/2010 (STX), and assigned it to a judge, resulting in this Court dismissing the mandamus petition, as moot, without prejudice. The District Court, in a March 2, 2010 order, dismissed Rivera-Moreno's duplicative habeas corpus petition for lack of jurisdiction, noting the petition clearly specified that he sought relief only under Virgin Islands habeas corpus law, and that the Superior Court, and not the District Court, possessed jurisdiction to adjudicate it.

The Superior Court, finding some merit in Rivera-Moreno's habeas corpus petition, appointed the Office of the Territorial Public Defender as his counsel. Nevertheless, the matter languished for years, resulting in additional proceedings in this Court, including two further mandamus petitions and an attempted interlocutory appeal. Although the Superior Court scheduled a hearing for February 3, 2011, at the hearing, neither Rivera-Moreno nor the Government were ready to proceed, resulting in the hearing being continued without a specified future date. On October 9, 2012, the Government finally filed its first substantive response to the Rivera-Moreno's petition, in which it stipulated that Juror No. 173 had sat on the jury, but argued that Rivera-Moreno had not suffered any actual prejudice.

Eventually, the Superior Court referred the matter to a magistrate to issue proposed findings of fact and conclusions of law. Without holding a hearing, the magistrate issued a recommendation on October 10, 2013. Although the Superior Court had denied an earlier motion by the Government to dismiss Rivera-Moreno's habeas corpus petition for lack of jurisdiction, and despite being aware of the District Court's March 2, 2010 order, the magistrate concluded that the Superior Court lacked jurisdiction because Rivera-Moreno had been convicted of both federal and local offenses in the original District Court prosecution, and that the

---

[4] Prior to January 29, 2007, "the Appellate Division of the District Court possessed appellate jurisdiction over all appeals of orders entered by the Superior Court." *Martin v. Martin*, 54 V.I. 379, 385 (V.I. 2010). After that date, the Supreme Court of the Virgin Islands officially assumed such jurisdiction. *Hypolite v. People*, 51 V.I. 97, 101 (V.I. 2009).

Superior Court could not grant habeas relief under such circumstances. Alternatively, the magistrate determined that Rivera-Moreno's habeas corpus petition should be construed as a motion for a new trial or for judgment of acquittal, and recommended that it be denied as untimely since the limitations periods set forth in Superior Court Rule 135 — governing Superior Court proceedings — and Federal Rules of Criminal Procedure 29 and 33 — which would have applied to Rivera-Moreno's trial in the District Court — had both long since lapsed. Finally, the magistrate recommended that even if construed as a habeas corpus petition, Rivera-Moreno was not entitled to any relief because he purportedly failed to demonstrate that Juror No. 173 had actually sat on the jury that convicted him, despite the fact that the Government had conceded this fact in its October 9, 2012 response.

The Superior Court, in a January 9, 2014 order, independently reviewed the magistrate's recommendations. First, the Superior Court rejected the magistrate's recommendation to dismiss the habeas corpus petition for lack of jurisdiction, concluding that Rivera-Moreno could challenge his local convictions in the Superior Court notwithstanding the fact that he had also been convicted of federal charges as part of the same trial. The Superior Court agreed, however, that since Rivera-Moreno sought either an acquittal or a new trial as the remedy, his habeas corpus petition should be construed as a motion for judgment of acquittal or for a new trial, and denied as untimely. Moreover, the Superior Court approved of the magistrate's alternate conclusion that Rivera-Moreno had failed to prove that Juror No. 173 had sat on his jury despite being excused for bias. Thus, the Superior Court dismissed Rivera-Moreno's habeas corpus petition with prejudice. Rivera-Moreno timely filed his notice of appeal with this Court on February 7, 2014. *See* V.I.S.CT.R. 5(a)(1).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." "An order denying a petition for a writ of habeas corpus is a final order . . . from which an appeal may lie." *Suarez v. Gov't of the V.I.*, 56 V.I. 754, 758 (V.I. 2012). Since the Superior Court's

January 9, 2014 order dismissed Rivera-Moreno's habeas corpus petition with prejudice, this Court possesses jurisdiction over this appeal. Moreover, this Court exercises plenary review over the dismissal of a habeas corpus petition. *Mendez v. Gov't of the V.I.*, 56 V.I. 194, 199 (V.I. 2012).

## B. Construction of Rivera-Moreno's Petition

The Superior Court, in its January 9, 2014 order adopting the magistrate's October 10, 2013 recommendation in part, re-construed Rivera-Moreno's habeas corpus petition as a motion for a new trial or a judgment of acquittal, and proceeded to deny the petition as untimely. Before addressing this issue, we must first consider the source and extent of the writ of habeas corpus in the Virgin Islands.

Section 3 of the Revised Organic Act of 1954 provides that "[a]ll persons shall have the privilege of the writ of habeas corpus and the same shall not be suspended except as herein expressly provided." 48 U.S.C. § 1561. Consistent with this guarantee, the Legislature enacted chapter 91 of title 5 of the Virgin Islands Code to establish a procedure for seeking habeas corpus relief under Virgin Islands law. Modeled after similar provisions of the 1921 Code, the statute codifies the right to habeas corpus and explains the process through which it can be obtained. 5 V.I.C. §§ 1301-25. Pursuant to this statute,

> Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint.

5 V.I.C. § 1301. Upon the filing of such a petition, the custodian of the petitioner must explain under what lawful order the petitioner is detained. 5 V.I.C. § 1308(a) (referring to the process as the "return" of the writ). The statute further provides certain circumstances under which a petitioner may be discharged from custody:

> If it appears on the return of the writ that the prisoner is in custody by virtue of process from any court or judge or officer thereof, such prisoner may be discharged in any of the following cases, subject to the restriction of section 1313 of this title:

> (1) When the jurisdiction of such court or officer has been exceeded.

293

(2) When the imprisonment was at first lawful, yet by some act, omission, or event which has taken place afterwards, the party has become entitled to a discharge.

(3) When the process is defective in some matter of substance required by law rendering such process void.

(4) When the process, though proper in form, has been issued in a case not allowed by law.

(5) When the person having custody of the prisoner is not the person allowed by law to detain him.

(6) Where the process is not authorized by any order, judgment or decree of any court, nor by any provision of law.

(7) Where a party has been committed on a criminal charge without reasonable or probable cause.

5 V.I.C. § 1314.[5]

The Superior Court, in its January 9, 2014 order, observed that "[t]he only relief available to [Rivera-Moreno] in this habeas proceeding is his discharge from confinement, available only in the event that any of [these] seven enumerated conditions is found to exist." (J.A. 851.) While the January 9, 2014 order fails to provide further elaboration as to why Rivera-Moreno's petition was re-construed as a motion for a new trial or for judgment of acquittal, it appears the Superior Court intended to adopt the portion of the magistrate's October 10, 2013 recommendation that stated that while "[t]he petition seeks a new trial or a vacated sentence . . . the only remedy available under the Virgin Islands habeas corpus statute is discharge," and concluded that "[a]lthough the remedies sought by [Rivera-Moreno] are not available under the habeas corpus statute, Superior Court Rule 135 and Federal Rule of Criminal Procedure 33 do provide procedures for requesting a new trial." (J.A. 876.)

 Both the Superior Court judge and magistrate were mistaken in concluding that discharge is the only remedy available under the local

---

[5] In its January 9, 2014 order, the Superior Court concluded that discharge from custody is only available as a remedy if one of these seven conditions is met. However, neither section 1314 nor any other provision of the habeas corpus statute provides that a prisoner may *only* be released in one of these seven scenarios, and thus we decline to hold that these seven circumstances are exclusive. *Cf. Connor v. People*, 59 V.I. 286, 296 n.8 (V.I. 2013) (rejecting argument that a list of deadly or dangerous weapons in a statute is exhaustive).

habeas corpus statute. First, we note that both the judge and the magistrate overlooked binding precedent from this Court in which it expressly ordered relief well-short of immediate discharge from custody as a remedy under the local habeas corpus statute.[6] *Bryan v. Gov't of the V.I.*, 56 V.I. 451, 459 (V.I. 2012) (granting relief under local habeas corpus statute, but limiting remedy to right to withdraw guilty plea and proceed to trial on original charges). While the *Bryan* decision did not explicitly identify the basis for this remedy, the habeas corpus statute itself contemplates remedies other than discharge. It provides that the petitioner, at a hearing on his petition, "may deny or controvert any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show *either* that his imprisonment or detention is unlawful, *or* that he is entitled to his discharge." 5 V.I.C. § 1311 (emphases added). By making use of the disjunctive, the habeas corpus statute recognizes that an incarcerated individual may not be entitled to immediate discharge from custody, yet may still be unlawfully imprisoned and entitled to relief. *See Gilbert v. People*, 52 V.I. 350, 364 (V.I. 2009) (contrasting the remedy available for trial error, a new trial, with the remedy available when the evidence is insufficient to sustain a conviction, an outright acquittal).

██ Perhaps more importantly, the very next sentence in this statute provides that, at the hearing, "[t]he court shall thereupon proceed in a summary way to hear such proof as may be produced against such imprisonment or detention, or in favor of the same, *and to dispose of such party as the justice of the case may require.*" 5 V.I.C. § 1311 (emphasis added). When the Virgin Islands Legislature adopts a statute that is identical or similar to one in effect in another state, Virgin Islands courts will typically adopt the original jurisdiction's construction of the statute

[6] In the October 10, 2013 recommendation, the magistrate acknowledged that Rivera-Moreno did not seek release from confinement, but stated that granting a new trial would require setting aside the December 18, 1991 judgment and commitment, which the magistrate concluded "would necessarily require [his] release from incarceration." (J.A. 876 n.2.) This, however, is simply not correct; while granting a new trial would set aside the December 18, 1991 judgment and commitment — or at least the portion pertaining to the local charges — it would also have the effect of reinstating the criminal charges of which Rivera-Moreno had been previously found guilty, including first-degree murder. Under Virgin Islands law, a defendant charged with first-degree murder is not entitled to bail if the proof is evident or the presumption great that the defendant committed the crime. *Williams v. People*, 53 V.I. 514, 522 (V.I. 2010) (citing *Browne v. People*, 50 V.I. 241, 257-58 (V.I. 2008)).

prevailing at the time of its adoption. *Chinnery v. People*, 55 V.I. 508, 519 n.6 (V.I. 2011); *see also Bryan v. Fawkes*, 61 V.I. 201, 231 (V.I. 2014) (citing *Ward v. People*, 58 V.I. 277, 283-84 (V.I.), *cert. denied*, 134 S. Ct. 516 (2013)); *see also* 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 52.2 (7th ed. 2008) (collecting cases). We recognize that there is some uncertainty as to whether the Virgin Islands habeas corpus statute was modeled after the Puerto Rico or California habeas corpus statutes, given that both share the same language. *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 381 (V.I. 2013) (Hodge, C.J., concurring). Thus, in the absence of any evidence that the Virgin Islands Legislature borrowed our habeas corpus statute from a particular jurisdiction, this Court considers as persuasive authority decisions of both the Supreme Court of Puerto Rico and the Supreme Court of California. *See Cascen v. People*, 60 V.I. 392, 403 (V.I. 2014) (identifying four possible source jurisdictions for 14 V.I.C. § 922 and relying on precedent from all four).

▮ The Supreme Courts of California and Puerto Rico have both interpreted the "dispose of such party as the justice of the case may require" language as authorizing remedies other than immediate discharge, such as ordering a new sentencing hearing. *Ex parte Seeley*, 29 Cal. 2d 294, 176 P.2d 24, 30 (1946); *Reyes v. Delgado*, 81 P.R.R. 906, 81 D.P.R. 937, 943 (1960) (holding that a statute identical to 5 V.I.C. § 1311 confers authority to grant a new trial whenever justice so requires). Additionally, the District Court of the Virgin Islands, in a decision interpreting a provision in the 1921 Codes that contained virtually identical language to the current Virgin Islands habeas corpus statute, granted habeas corpus relief to a petitioner who had been convicted in "plain violation of the provision of the [1921] Code that 'No person can be compelled in a criminal action, to be a witness against himself.' " *In re Gibbons*, 1 V.I. 57, 59-60 (D.V.I. 1924). This broad construction of the "as the justice of the case may require" language by the Supreme Court of California, the Supreme Court of Puerto Rico, and the District Court of the Virgin Islands provides strong evidence that discharge from custody pursuant to one of the seven scenarios enumerated in section 1314 is not the only remedy a court may grant under the habeas corpus statute.

▮▮ Moreover, as noted above, the local habeas corpus statute is not the sole source of the right of habeas corpus in the Virgin Islands, for section 3 of the Revised Organic Act guarantees that the writ of habeas corpus be available in the Virgin Islands. 48 U.S.C. § 1561; *Tobal v.*

*People*, 51 V.I. 147, 152 (V.I. 2009) (explaining that the Revised Organic Act serves as a *de facto* constitution for the Virgin Islands which the Legislature may not override). The legislative history for the Revised Organic Act provides no guidance concerning the habeas provision, 83 P.L. No. 517, 68 Stat. 497. (1954), yet the Court is not without interpretative tools. It is appropriate to presume that Congress intended that the meaning of the habeas corpus provision it included in the Revised Organic Act would be consistent with the United States Supreme Court's interpretation of the habeas corpus provision of the United States Constitution. *See United States v. Wells*, 519 U.S. 482, 495, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997) (presuming "that Congress expects its statutes to be read in conformity with [Supreme Court] precedents"); *see also* Conf. Rep. No. 2105, *reprinted in* 1954 U.S.C.C.A.N. 2619, 2620 (noting that section 3 of the Revised Organic Act "provides a bill of rights which is in considerable extent similar to the Bill of Rights of the United States Constitution").

█ The United States Supreme Court has repeatedly held that, at a minimum, the common law writ of habeas corpus encompasses a right to remedy constitutional violations. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 301-03, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (noting that, "at the absolute minimum, the Suspension Clause protects the writ 'as it existed in 1789,'" and further stating that "early [Supreme Court] cases [addressing the common law writ of habeas corpus] contain no suggestion that habeas relief in cases involving Executive detention was only available for constitutional error" (quoting *Felker v. Turpin*, 518 U.S. 651, 663-64, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996))); *United States ex rel. Darcy v. Handy*, 351 U.S. 454, 462, 76 S. Ct. 965, 100 L. Ed. 1331 (1956) (noting that, on review of a denial of habeas corpus, the Court "[stood] ready to correct violations of constitutional rights," including trial errors that might impact a defendant's due process rights, although finding none in that case).

At the time of the founding of this country, courts interpreted the constitutional right to habeas corpus to be coextensive with interpretations given to the common law right to the writ. *Sunal v. Large*, 332 U.S. 174, 184-87, 67 S. Ct. 1588, 91 L. Ed. 1982 (1947) (Frankfurter, J. dissenting) (discussing the history of the right to habeas corpus and its interpretation by the United States Supreme Court). Notably, the United States Supreme Court allowed petitioners to seek habeas corpus relief on numerous grounds, including for violations of specific constitutional rights. *See, e.g.*,

*Moore v. Dempsey*, 261 U.S. 86, 91, 43 S. Ct. 265, 67 L. Ed. 543 (1923) (due process); *Counselman v. Hitchcock*, 142 U.S. 547, 584-86, 12 S. Ct. 195, 35 L. Ed. 1110 (1890) (self-incrimination); *Ex parte Bigelow*, 113 U.S. 328, 328-31, 5 S. Ct. 542, 28 L. Ed. 1005 (1885) (double jeopardy).

■ Thus, when Congress adopted the Revised Organic Act with its habeas corpus provision, it intended that the right in this Territory be interpreted consistent with the common law understanding of the writ at the time of its enactment. *See Wells*, 519 U.S. at 495. Consequently, the Superior Court, consistent with section 3 of the Revised Organic Act, would be required to provide a successful habeas corpus petitioner with redress in the form of a remedy that cures the constitutional violation, even if that remedy was not expressly authorized by a Virgin Islands statute. *Cf. Williams v. People*, 59 V.I. 1024, 1041 (V.I. 2013) (ordering re-sentencing for a juvenile convicted of first-degree murder in accordance with *Miller v. Alabama*, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), notwithstanding the fact that Virgin Islands statute provides for mandatory life imprisonment without parole).

■■ In his original *pro se* filing and in the supplemental pleadings filed by counsel, Rivera-Moreno made it clear, in both substance and form, that he sought habeas corpus relief under section 1301 of title 5 of the Virgin Islands Code. Since a court, when granting habeas corpus relief, may order a remedy other than discharge from incarceration, the Superior Court had no basis to convert Rivera-Moreno's habeas corpus petition into a motion for a new trial or for a judgment of acquittal, especially when doing so subjected his filing to dismissal for failure to comply with time limitations that are otherwise inapplicable to habeas corpus petitions. *See Joseph v. Bureau of Corr.*, 54 V.I. 644, 650 (V.I. 2010) ("[B]oth this Court and the United States Supreme Court have recognized that there is a strong preference for trial courts to decide doubtful cases on their merits rather than dismiss them for a failure to strictly follow purely procedural rules."). Therefore, the Superior Court erred when it converted Rivera-Moreno's habeas corpus petition into a motion for new trial or for judgment of acquittal, and proceeded to dismiss it as untimely.

## C. Technical Defects in Habeas Corpus Petition

In its appellate brief, the Government contends, for the first time on appeal, that the Superior Court should have summarily dismissed Rivera-

Moreno's habeas corpus petition because he failed to comply with the procedural requirements set forth in section 1302 of title 5 of the Virgin Islands Code. That statute provides, in its entirety, as follows:

> Application for the writ of habeas corpus shall be made by petition signed either by the party for whose relief it is intended or by some person in his behalf. The petition shall comply with the following requirements:
>
> > (1) It shall specify that the person in whose behalf the writ is applied for is imprisoned or restrained of his liberty and the officer or person by whom, and the place where, he is so confined or restrained, naming all the parties, if they are known, or describing them, if they are not known.
> >
> > (2) If the imprisonment is alleged to be illegal, the petition shall state in what the alleged illegality consists.
> >
> > (3) The petition shall be verified by the oath of the party making the application.

5 V.I.C. § 1302. According to the Government, Rivera-Moreno did not identify "the officer or person by whom, and the place where, he is so confined or restrained," as is required by section 1302(1), and failed to verify his petition by oath as mandated by section 1302(3).

██ ██ The Government's argument that Rivera-Moreno failed to comply with section 1302(1) lacks merit. Rivera-Moreno's habeas corpus petition identifies the Government of the Virgin Islands as the respondent, states that it was served on the Virgin Islands Attorney General,[7] and indicates throughout that he is incarcerated as the result of a criminal

---

[7] In its appellate brief, the Government also contends — again, for the first time on appeal — that Rivera-Moreno should have perfected service on the warden of Golden Grove Adult Correctional Facility — the institution in which he is presently incarcerated — rather than on the Attorney General. Because the Government fully participated in the proceedings below despite the purported defect in service, it has clearly waived any defects with respect to service of process. *See* 5 V.I.C. § 115 ("From the time of the service of the summons or the allowance of a provisional remedy the court shall be deemed to have acquired jurisdiction and to have control of all the subsequent proceedings. A voluntary appearance of the defendant shall be equivalent to personal service of the summons upon him."). In any case, as Rivera-Moreno correctly notes in his reply brief, the Bureau of Corrections served as a division of the Department of Justice at the time he filed his habeas corpus petition, and the Attorney General heads the Department and was properly served.

proceeding brought by the Government. And while Rivera-Moreno's petition itself does not state with specificity where he is imprisoned, the Government was clearly aware of where he was incarcerated, given that it was able to communicate with Rivera-Moreno and serve him with documents. (*See, e.g.*, J.A. 947.) Thus, the petition is in substantial compliance with the requirements of section 1302(1).

■ We agree with the Government, however, that the petition did not comply with section 1302(3), in that Rivera-Moreno did not verify the document by oath. Nevertheless, this defect is not dispositive. Given that the Government has raised this defect for the first time on appeal, dismissal of Rivera-Moreno's habeas corpus petition would only be appropriate if section 1302(3) codifies a jurisdictional requirement rather than a claims-processing rule. To determine whether a Virgin Islands statute establishes a jurisdictional requirement or only sets forth a claims-processing rule, we consider the intent of the Legislature. *Brady v. Cintron*, 55 V.I. 802, 815-17 (V.I. 2011). This Court considers several factors to ascertain legislative intent, including, but not necessarily limited to, whether the statute contains language requiring dismissal as a remedy for non-compliance, *see Brooks v. Gov't of the V.I.*, 58 V.I. 417, 427 (V.I. 2013), and the existence of long-standing case law — including precedent from other jurisdictions — characterizing the statutory requirement as jurisdictional. *See Henderson v. Shinseki*, 562 U.S. 428, 131 S. Ct. 1197, 1203, 179 L. Ed. 2d 159 (2011). Importantly, "there must be a 'clear' sign of the Legislature's intent to make a statutory requirement jurisdictional." *Brooks*, 58 V.I. at 426 (quoting *Brady*, 55 V.I. at 815).

■ ■ Unquestionably, the verification requirement codified in section 1302(3) represents a mere claims-processing rule. Neither section 1302 nor any other provision of the Virgin Islands habeas corpus statutes provides for dismissal if a prisoner files an unverified petition. Perhaps most importantly, virtually every court to consider the question has held that, when a statute requires that a complaint be verified by oath, the verification requirement is a non-jurisdictional claims processing rule. *See, e.g., Ex parte Collier*, 64 So. 3d 1045, 1050 (Ala. 2010) ("Although [the jurisdiction's habeas corpus statute] provides that a petition for a writ of habeas corpus must be verified by the oath of the applicant . . . this mandatory verification requirement has not been interpreted to be a jurisdictional prerequisite." (quoting *Smith v. State*, 918 So. 2d 141 (Ala.

Crim. App. 2005)) (internal quotation marks omitted)); *In re Linda D.*, 3 Cal. App. 3d 567, 83 Cal. Rptr. 544, 546 (1970) ("These jurisdictional objections have no merit on this appeal. Appellant did not challenge the unverified petition in the court below . . . . It is the rule that failure to verify a petition . . . is a defect in the pleading which does not go to the court's jurisdiction and must be raised prior to the hearing or it is waived."); *Freeman v. State*, 116 Idaho 985, 783 P.2d 324, 325 (Idaho Ct. App. 1989) ("The propriety of the summary dismissal in this case turns on the issue of whether verification of a petition for habeas corpus is a jurisdictional requisite . . . or whether verification is a procedural requirement which may be waived if not timely noted by the trial court or raised as a defense by the respondent. We think the latter to be the better reasoned view."); *Taylor v. McKune*, 25 Kan. App. 2d 283, 962 P.2d 566, 570 (1998) ("We have noted Taylor's petition was initially filed with no verification . . . . [N]one of the deficiencies or omissions deprive the district court of jurisdiction."); *Miles v. State*, 120 Nev. 383, 91 P.3d 588, 590 (2004) ("Under Nevada's post-conviction statutory scheme, an inadequate verification is an amendable, not a jurisdictional, defect."). Significantly, unlike the statutory time limitations this Court has characterized as jurisdictional, *see, e.g.*, *Pichardo v. Comm'r of Labor*, 49 V.I. 447, 450 (V.I. 2008), the failure to verify a habeas corpus petition may be easily rectified by permitting the prisoner to amend his petition. *See Brooks*, 58 V.I. at 429 ("Here, it is not clear what prejudice any party would suffer from a petitioner's correction of the caption early in the proceedings, which further suggests that the Legislature would not have made this factor a jurisdictional requirement."); SUPER. CT. R. 8 ("The court may amend any process or pleading for any omission or defect therein."). Thus, since section 1302(3) does not codify a jurisdictional defect, and its enforcement does not implicate any judicial interests beyond those of the parties, *see Simon v. Joseph*, 59 V.I. 611, 629 (V.I. 2013), the Government cannot invoke this defect for the first time on appeal, as it has waived Rivera-Moreno's noncompliance with the statute.

## D. Purported Waiver

The Government further argues that this Court should decline to consider Rivera-Moreno's appeal because all of the arguments made in his habeas corpus petition could have been, but were not, raised in his direct appeal to the Third Circuit more than two decades ago. Specifically,

the Government invokes this Court's decision in *Ibrahim v. Gov't of the V.I.*, S. Ct. Civ. No. 2007-0076, 2008 V.I. Supreme LEXIS 20 (V.I. Jan. 16, 2008) (unpublished), for the proposition that a litigant cannot re-litigate, through a habeas corpus petition, issues that could have been, but were not, raised on direct appeal. Although the January 9, 2014 order did not expressly conclude that Rivera-Moreno had waived his arguments by failing to present them on direct appeal, both it, as well as the magistrate's October 10, 2013 recommendation, emphasized that a habeas corpus petition is not a substitute for a direct appeal and cannot be used as a vehicle to litigate issues that could have been, but were not, previously raised. We reject the Government's contention.

The brief unreported decision in *Ibrahim* declined to "rehash" issues actually raised and decided by the jury at the petitioner's criminal trial which had then been explicitly reviewed on direct appeal, *id.* at *4, and the Court proceeded to consider the previously unaddressed issue of ineffective assistance of counsel, further noting that even defects not raised at trial may raise fundamental issues that should be addressed at the habeas stage. *See id.* at *5-6 & n.2 (discussing trial court orders restricting access to the courts). *Ibrahim* did not announce a categorical, unforgiving ban on recognizing issues in a habeas corpus petition that could have been raised in an earlier direct appeal, and the federal case cited in that decision also does not stand for that proposition.[8] Any such implication has already been implicitly rejected in our subsequent cases and, as a policy matter,

---

[8] The unreported opinion in *Ibrahim* cited *United States v. Hollis*, 569 F.2d 199 (3d Cir. 1977), a case in which the defendant had raised the issue of mental competency at his arraignment but no competency hearing was held. Almost one year after he pleaded guilty and was sentenced, he filed a habeas corpus petition under 28 U.S.C. § 2255, contending that the trial court had erred in proceeding to sentencing without first ordering a mental examination. *Id.* at 201. No issue was raised about the petitioner's failure to take a direct appeal from the conviction and sentence, and the Third Circuit's decision on appeal from the section 2255 hearing on withdrawal of the guilty plea addressed solely the issue of who should bear the burden of proof on the issue of a defendant's mental competency on a section 2255 motion raising a post-conviction challenge to a guilty plea. *Id.* at 203-04. Thus there is no implication in the Third Circuit's decision in *Hollis* suggesting that, even under the federal statute, failure to raise issues on a direct appeal affects their cognizability on a later habeas application. *See also id.* at 206 n.11 (noting that under United States Supreme Court holdings, consideration of prior litigation of issues later raised on habeas applications is subordinate to "the very purpose of the writ of habeas corpus — to safeguard a person's freedom from detention in violation of constitutional guarantees" (quoting *Blackledge v. Allison*, 431 U.S. 63, 72, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977))).

is not operative in the Virgin Islands. *See George v. Wilson*, 59 V.I. 984, 989-90 (V.I. 2013) (citing *Ibrahim* for the standard applicable when actually reviewing issues raised on a habeas petition, and affirming denial of a seventh successive habeas corpus petition — not pursuant to any *per se* ban focusing on whether issues were raised in the criminal trial or appeal — but "using the equitable principle of the abuse of the writ doctrine," which prohibits multiple successive habeas corpus petitions raising new habeas contentions unless the petitioner can show "cause and prejudice" for omitting the current arguments from his several prior petitions); *Bryan*, 56 V.I. at 459 (granting habeas relief based on issue raised for the first time on appeal of denial of habeas corpus petition).

While the federal habeas corpus statute imposes numerous explicit procedural bars intended to limit the ability of prisoners — particularly those convicted of state and territorial crimes — to collaterally challenge their convictions in federal court, none of these provisions is found in the Virgin Islands habeas corpus statute. Thus, in light of the above discussion, the Court will consider, as persuasive authority, decisions of the Supreme Courts of California and Puerto Rico interpreting the similar statutes on which the Virgin Islands habeas provisions are based. *Bryan*, 61 V.I. at 214.

In December 1953 — nearly four years before the effective date of the local Virgin Islands habeas corpus statute — the Supreme Court of California interpreted its state habeas corpus statute to allow a prisoner to raise, for the first time in a petition for writ of habeas corpus, an issue that could have been raised on direct appeal, so long as it was not an attempt to "correct errors or irregularities relating to ascertainment of the facts when such errors could and should have been raised by appeal." *In re Dixon*, 41 Cal. 2d 756, 264 P.2d 513, 516 (1953). According to the California Supreme Court, such a rule is necessary because, although evidence may disappear and witnesses become unavailable during a long delay between an unappealed conviction and the filing of a petition for writ of habeas corpus, such concerns do not apply to purely legal questions. *Id.*

 As shall be explained in greater detail below in the discussion of the merits, Rivera-Moreno's habeas corpus petition does not raise any factual questions relating to his 1991 conviction, but raises only issues of law. And Rivera-Moreno has not previously filed any habeas corpus petitions, thus rendering the common law abuse of the writ doctrine

recognized by this Court in *George* wholly inapplicable. Accordingly, we hold that Rivera-Moreno has not waived his challenge to the empaneling of Juror No. 173 on his jury by failing to raise that issue on direct appeal to the Third Circuit.

### E. Superior Court Jurisdiction

In the October 10, 2013 recommendation, the Superior Court magistrate held that the District Court, and not the Superior Court, possessed jurisdiction over Rivera-Moreno's habeas corpus petition, and recommended that the Superior Court judge grant the Government's motion to dismiss for lack of jurisdiction. Specifically, the magistrate concluded that, because the District Court's December 18, 1991 judgment and commitment adjudicated Rivera-Moreno guilty of both federal and territorial crimes, the Superior Court lacked authority to set aside any portion of that decision. While the Superior Court judge rejected this portion of the magistrate's recommendation in his January 9, 2014 order, and the Government has not renewed this jurisdictional challenge on appeal, this Court nevertheless possesses an independent obligation to determine that the Superior Court properly exercised jurisdiction over this case, *In re Guardianship of Smith*, 54 V.I. 517, 525-26 (V.I. 2010), particularly given that Rivera-Moreno's habeas corpus petition implicates a proceeding that occurred in the District Court. *Cf. Simon*, 59 V.I. at 626, 630 (identifying maintenance of comity between courts as a justification for invoking an otherwise waived claims-processing rule on appeal).

At the time the local habeas corpus statute went into effect on September 1, 1957, *see* 1 V.I.C. § 3, "the Municipal Court — the predecessor to the Superior Court — possessed exclusive jurisdiction over all criminal cases arising under local law in which the maximum punishment which [might] be imposed [did] not exceed a fine of $100 or imprisonment for six months, or both, while the District Court possessed exclusive jurisdiction over all other criminal actions arising under local law." *Murrell v. People*, 54 V.I. 338, 353 (V.I. 2010) (internal quotation marks omitted). Except for these minor offenses, "[t]he District Court's exclusive jurisdiction over criminal cases arising under either federal or local law lasted until 1984, when Congress, through an amendment to the Revised Organic Act of 1954 . . . bestowed concurrent jurisdiction to the Superior Court . . . over criminal offenses arising out of violations of local law." *Phillips v. People*, 51 V.I. 258, 273 (V.I. 2009). These amendments,

however, were not self-executing, and the District Court's jurisdiction over purely local criminal offenses was not reduced until January 1, 1994, when the Virgin Islands Legislature amended section 76(b) of title 4 of the Virgin Islands Code to vest the Superior Court with original jurisdiction over all local criminal offenses, including first-degree murder. *Mendez,* 56 V.I. at 200-01.

■■ In light of this background, at the time of his October 1991 trial, it is clear that the District Court possessed jurisdiction to try Rivera-Moreno for first-degree murder and the other purely local charges. However, even under current law, the District Court would have jurisdiction to try Rivera-Moreno for those crimes. The Supreme Court of the United States has interpreted the Double Jeopardy Clause of the Fifth Amendment to prohibit different legal subdivisions of a single sovereign from engaging in multiple prosecutions for essentially the same offense. *Robinson v. Neil,* 409 U.S. 505, 506-07, 93 S. Ct. 876, 35 L. Ed. 2d 29 (1973) (applying *Waller v. Florida,* 397 U.S. 387, 395, 90 S. Ct. 1184, 25 L. Ed. 2d 435 (1970)). "[T]he Government of the Virgin Islands is not itself a sovereign entity." *In re Admission of Alvis,* 54 V.I. 408, 413 (V.I. 2010) (quoting *Magens Point Resort Hotel v. Benjamin,* 58 V.I. 191, 196 (V.I. 2009)). Therefore, while Congress has generally chosen to treat the Virgin Islands as the equivalent of a state government, *see, e.g.,* 48 U.S.C. § 1613, the Virgin Islands territorial government is a subdivision of the United States government, and thus "the Virgin Islands and the federal government are considered one sovereignty for the purpose of determining whether an individual may be punished under both Virgin Islands and United States statutes for a similar offense growing out of the same occurrence." *United States v. Hodge,* 211 F.3d 74, 78 (3d Cir. 2000) (quoting *Gov't of the V.I. v. Brathwaite,* 782 F.2d 399, 406 (3d Cir. 1986)).

■■ The 1984 amendments to the Revised Organic Act ensure "that the District Court would retain concurrent jurisdiction over charges alleging local crimes that are related to federal crimes." *United States v. Gillette,* 738 F.3d 63, 71, 60 V.I. 855 (3d Cir. 2013) (citing 48 U.S.C. § 1612(c)). Pursuant to this provision,

> The District Court of the Virgin Islands shall have concurrent juris-diction with the courts of the Virgin Islands established by local law over those offenses against the criminal laws of the Virgin Islands, whether felonies or misdemeanors or both, which are of the same or

similar character or part of, or based on, the same act or transaction or two or more acts or transactions connected together or constituting part of a common scheme or plan, if such act or transaction or acts or transactions also constitutes or constitute an offense or offenses against one or more of the statutes over which the District Court of the Virgin Islands has jurisdiction.

48 U.S.C. § 1612(c).

In this case, the United States charged Rivera-Moreno with escape from custody and possessing a firearm while facing federal felony charges, while the Government of the Virgin Islands charged him with first-degree murder, assault with a deadly weapon, and unauthorized possession of a firearm during the commission of a crime of violence. While the escape from custody charge does not appear related to the local charges, it is clear that the federal firearm charge is "of the same or similar character or part of, or based on, the same act or transaction" as the local charges, implicating the District Court's continuing supplemental criminal jurisdiction, given that Rivera-Moreno's alleged possession and use of the same firearm underlies all of those crimes. 48 U.S.C. § 1612(c).

██ In the October 10, 2013 recommendation, the magistrate acknowledged the decision in *Parrott v. Gov't of the V.I.*, 230 F.3d 615, 43 V.I. 277 (3d Cir. 2000), which this Court subsequently adopted in *Mendez*. "In *Parrott*, the United States Court of Appeals for the Third Circuit . . . determined that, subsequent to the 1984 amendments, section 76(a) [of title 4] of the Virgin Islands Code implicitly repealed the jurisdiction of the District Court of the Virgin Islands over local civil actions." *Mendez*, 56 V.I. at 203 (citing *Parrott*, 230 F.3d at 620). "Consequently, the Third Circuit held that the Superior Court has jurisdiction, upon the filing of a petition for habeas corpus relief, to review prior criminal decisions rendered by the District Court of the Virgin Islands in the District Court's role as a local territorial court." *Id.*; *see also Parrott*, 230 F.3d at 621 ("[T]he divesting of the District Court of its jurisdiction for local civil actions also strips it of jurisdiction for local habeas petitions from territorial prisoners . . . even though the District Court sentenced those prisoners."). In other words, the Superior Court may, in a habeas corpus action, set aside a judgment issued by the District Court, so long as the petitioner is detained on charges in which the Superior Court now acts as the successor court to the District Court. *Mendez*, 56 V.I. at 204.

The magistrate, however, concluded that *Parrott* did not apply to this case. While the magistrate recognized that the District Court, in its March 2, 2010 order dismissing Rivera-Moreno's duplicative habeas corpus petition for lack of jurisdiction, concluded that *Parrott* established the Superior Court as the proper forum to adjudicate Rivera-Moreno's petition, the magistrate reasoned that the Superior Court could not be a successor court to the District Court in this case because the concurrent jurisdiction provisions of 48 U.S.C. § 1612(c) would mandate that Rivera-Moreno be tried in the District Court even if he had been prosecuted today as opposed to twenty years ago, given that a federal charge arose from the same act as the local charges. To support this interpretation, the magistrate cites to a passage in the *Parrott* opinion in which the Third Circuit stated that "[t]he Superior Court can only exercise habeas review of cases in which it is the successor court to the District Court's now-terminated territorial jurisdiction" and then observes in a footnote that "[t]he one limitation on this general separation of jurisdiction for local criminal matters is when a charged local crime relates to federal crimes as well." 230 F.3d at 622 & n.10 (citing *Callwood v. Enos*, 230 F.3d 627, 631, 43 V.I. 293 (3d Cir. 2000)).

In its January 9, 2014 order, the Superior Court judge summarily rejected the magistrate's jurisdictional recommendation. Without ever discussing 48 U.S.C. § 1612(c), the judge simply stated that Rivera-Moreno had been convicted of local crimes prior to January 1, 1994, and therefore could seek relief under the local habeas corpus statute with respect to those local convictions. Given the cursory analysis of this question, including the complete failure to analyze 48 U.S.C. § 1612(c), it is not apparent that the judge fully appreciated exactly why the magistrate questioned the Superior Court's jurisdiction.[9]

---

[9] We note that the Appellate Division of the District Court, in an appeal brought by Rivera-Moreno's co-defendant, Harold Oveson, who was also convicted of both federal and local offenses in the District Court, has held that the Superior Court possesses jurisdiction to adjudicate a habeas corpus petition filed under local law that seeks to set aside only the local offenses. *Oveson v. Gov't of the V.I.*, D.C. Civ. App. No. 2006-0120, 2011 U.S. Dist. LEXIS 45540 (D.V.I. App. Div. Apr. 24, 2011) (unpublished). However, like the January 9, 2014 order in this case, the Appellate Division did not appear to understand the nature of the Government's reliance on 48 U.S.C. § 1612(c), in that it rejected the Government's argument on the basis that "Oveson's habeas petition is civil in nature" and "[t]he District Court's concurrent jurisdiction is only applicable to Criminal matters." *Oveson*, 2011 U.S. Dist. LEXIS

■ Yet the judge was nevertheless correct to conclude that Rivera-Moreno could seek to set aside his local convictions through a habeas corpus petition filed in the Superior Court. Legislative history illustrates that the concurrent jurisdiction provision of 48 U.S.C. § 1612(c) was intended to safeguard the rights of criminal defendants in the Virgin Islands to be free from double jeopardy by allowing the federal District Court to adjudicate federal and local criminal charges as part of a single proceeding. 130 CONG. REC. S23,789 (daily ed. Aug. 10, 1984) (noting that one of the explicit purposes in creating the concurrent jurisdiction statute was "to obviate the need for trying in different courts separate aspects of the same offense or of closely related offenses"). Importantly, the statute provides for the District Court to possess *concurrent* — and not *exclusive* — jurisdiction over local offenses relating to federal offenses, meaning that the local offenses could be tried in either the Superior Court or the District Court. *See Azille v. People*, 59 V.I. 215, 222 (V.I. 2012) (contrasting concurrent jurisdiction with exclusive jurisdiction). Of course, were the prosecution to elect to try the local offenses in the Superior Court, the Double Jeopardy Clause would preclude a subsequent prosecution of the related federal offenses in the District Court. *Gov't of the V.I. ex rel. Robinson v. Schneider*, 893 F. Supp. 490, 495 (D.V.I. 1995) (citing *Grafton v. United States*, 206 U.S. 333, 354-55, 27 S. Ct. 749, 51 L. Ed. 1084 (1907) & *Puerto Rico v. Shell Co.*, 302 U.S. 253, 264-65, 58 S. Ct. 167, 82 L. Ed. 235 (1937)).

■ It is well established, however, that individuals may voluntarily waive their double jeopardy rights. *See Najawicz v. People*, 58 V.I. 315, 324 (V.I. 2013) (collecting cases). Perhaps the textbook example of a double jeopardy waiver occurs when a criminal defendant complains of an error that occurred during his original trial and requests that a court order a new trial as a remedy. *Joseph v. People*, 60 V.I. 338, 350 n.9 (V.I. 2013).

■ The Superior Court is clearly not a successor court of the District Court with respect to the federal charges, and thus lacks jurisdiction to order a new trial for his escape from custody and possession of a firearm

45540 at *13. In other words, the Appellate Division apparently misconstrued the Government's argument as a contention that 48 U.S.C. § 1612(c) gave the District Court concurrent jurisdiction over habeas corpus petitions, when the Government had instead argued — as it did before the magistrate in this case — that the Superior Court could not be a successor court since the District Court could, pursuant to 48 U.S.C. § 1612(c), exercise the very same jurisdiction today as it had twenty years ago.

while under indictment convictions. However, the fact that Rivera-Moreno was adjudicated guilty of local and federal charges as part of the same proceeding does not preclude him from requesting that the Superior Court set aside only those local convictions. Rivera-Moreno filed a habeas corpus petition with the Superior Court pursuant to Virgin Islands statutory law, specifically requesting a new trial on his local convictions. Consequently, he has affirmatively waived the double jeopardy protections afforded to him by the Fifth Amendment and 48 U.S.C. § 1612(c), and, in the event that his habeas corpus petition is granted and the new trial he has requested is authorized, has consented to a new trial on those local charges even if his federal convictions remain intact and the federal sentences have been fully served. Accordingly, the Superior Court possesses jurisdiction to set aside the portion of the District Court's December 18, 1991 judgment and commitment adjudicating Rivera-Moreno guilty of local crimes, and to order a new trial on those charges while leaving his federal convictions undisturbed.

## F. Merits

Having resolved these procedural issues, this Court may now consider the merits of Rivera-Moreno's appeal.[10] For the reasons that follow, we conclude that the Superior Court erred when it denied Rivera-Moreno's habeas corpus petition.

### 1. *Factual Record and Evidentiary Hearing*

In the October 10, 2013 recommendation, the magistrate noted that

> [Rivera-Moreno] alleges during *voir dire* [that] juror number 173 expressed an inability to decide the case impartially based on the evidence produced in the courtroom. [Rivera-Moreno] provided an excerpt from the *voir dire* transcript showing juror number 173's response to the trial court's inquiry and the court's response that the juror would be excused. However, [Rivera-Moreno] provided no sup-

---

[10] In his original habeas corpus petition, Rivera-Moreno also challenged the correctness of the District Court's jury instructions, alleging that they shifted the burden of persuasion from the prosecution onto him with respect to one of the elements of the local deadly weapon charge. Although the Superior Court rejected this argument, this Court need not review the correctness of that decision because Rivera-Moreno has not briefed this issue in his appellate brief. V.I.S.Ct.R. 22(m) ("Issues that were . . . raised or objected to but not briefed . . . are deemed waived for purposes of appeal.").

port for the allegations that the juror was never excused and ended up sitting on the jury that ultimately found [him] guilty. . . . The petition assumes critical facts not supported by the pleadings, namely, (1) that juror number 173 was not excluded by the trial court after indicating bias or prejudice, (2) that juror number 173 was ultimately selected to be a member of the jury that convicted [Rivera-Moreno], and (3) that juror number 173's alleged bias contaminated the jury verdict to the point that [Rivera-Moreno]'s constitutional rights were violated.

(J.A. 878.) In its January 9, 2014 order, the Superior Court largely agreed with the magistrate, holding that

[Rivera-Moreno] claims that his rights to a fair and impartial jury guaranteed him under the Sixth and Fourteenth Amendments to the U.S. Constitution were denied at trial. [He] presents evidence that an individual (Juror No. 173) stated in *voir dire* examination that "I feel they are guilty." As a result of that comment and the colloquy with the Court that followed, the Court determined that [the juror would be] excuse[d].

Despite that exchange, apparently Juror No. 173 was not excused and may have been empaneled with the jury. Yet, despite the fact that [Rivera-Moreno]'s proof raises questions, it lacks sufficient detailed information to confirm that a tainted juror participated in determining [his] guilt. In addition to providing transcript pages of the *voir dire* examination, [Rivera-Moreno] has not presented, for example, a certified copy of the list of the final jury composition; confirmation that the juror in question was not merely an alternate, later dismissed; a certified copy of the jury verdict form signed by all jurors at the conclusion of trial; an affidavit or any proof from any juror, or otherwise, that the process by which evidence was received, jurors deliberated, and verdict rendered was in any way tainted.

[Rivera-Moreno] bears the burden of proving the facts supporting the Petition or establishing grounds entitling him to relief, including pleading specific factual allegations, rather than conclusory or speculative allegations, which would entitle [him] to habeas relief. . . . The evidence presented with the Petition requires that the Court speculate that the jury verdict was less than fair. In the context of this habeas Petition, now more than twenty years after the Jury rendered its ver-

310

dict, this Court will not engage in the speculation required to grant the relief [Rivera-Moreno] seeks.

(J.A. 852-53.)

In his appellate brief, Rivera-Moreno contends that the Superior Court failed to even attempt to comply with the procedural requirements of the local habeas corpus statute, in that the Superior Court denied his habeas corpus petition based on its adjudication of factual issues without holding a hearing. Moreover, Rivera-Moreno notes that the record of the District Court proceedings — which had been available to the Superior Court — unquestionably demonstrates that Juror No. 173 had been empaneled as a juror, and had signed the verdict form adjudicating him guilty of all counts, and that in any event the Government had stipulated to these facts. Notably, the Government implicitly agrees with Rivera-Moreno that the Superior Court committed error in this regard, in that it concedes in its appellate brief that Juror No. 173 sat on the jury despite having been excused for bias, but only argues that this error did not result in any prejudice.

██ Clearly, the Superior Court failed to appreciate the procedural requirements of the Virgin Islands habeas corpus statute. "When presented with a petition for a writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief — that is, whether it states facts that, if true, entitle the petitioner to relief — and also whether the stated claims are for any reason procedurally barred." *People v. Romero*, 8 Cal. 4th 728, 35 Cal. Rptr. 2d 270, 883 P.2d 388, 391 (1994) (explaining the habeas corpus procedure under California's nearly identical statutes). "If the court determines that the petition does not state a prima facie case for relief or that the claims are all procedurally barred, the court will deny the petition outright," *id.*, but "if it appears that the writ ought to issue," the Superior Court "shall grant [a writ of habeas corpus] without delay." 5 V.I.C. § 1304; *see also Romero*, 883 P.2d at 393 ("As the means by which a judicial proceeding is instituted, the issuance of the writ (or order to show cause) is mandatory, not optional.").

██ Granting the writ of habeas corpus — which only requires the Government to produce the petitioner for a hearing — constitutes an intermediate step in the statutory procedure. 5 V.I.C. § 1304 ("The court . . . shall grant the [writ] . . . without delay."); 5 V.I.C. § 1309 ("The person or officer on whom the writ is served shall bring the body of the

[petitioner] . . . according to the command of the writ."); *cf. Romero*, 883 P.2d at 391 n.4 ("The writ of habeas corpus 'gets its name from the portion of the writ commanding the custodian to have the body . . . of the detained person before the court or judge at the time specified in the writ.'" ·(quoting DONALD E. WILKES, JR., FEDERAL AND STATE POSTCONVICTION REMEDIES AND RELIEF § 2-2 (1992))). And once Rivera-Moreno made out a prima facie case for relief that was not procedurally barred, the Superior Court was required to issue a writ of habeas corpus to the person having custody over him, mandating Rivera-Moreno's production in court. *See In re Harris*, 5 Cal. 4th 813, 21 Cal. Rptr. 2d 373, 855 P.2d 391, 397 (1993) ("[O]ne seeking relief on habeas corpus need only file a petition for the writ alleging facts which, if true, would entitle the petitioner to relief.").

In this case, the Superior Court implicitly found, by appointing the Office of the Territorial Public Defender as his counsel and ordering a response from the Government, that Rivera-Moreno had made a prima facie showing that he may be entitled to relief, and thus in effect issued the writ. *In re Drue*, 57 V.I. 517, 527-28 (V.I. 2012) (the substance and function of a Superior Court order controls over the form) (citing *In re Najawicz*, 52 V.I. 311, 325 (V.I. 2009)). But the writ alone did not entitle Rivera-Moreno to the ultimate relief he is seeking in his petition. *Romero*, 883 P.2d at 391 ("The role that the writ of habeas corpus plays is largely procedural. It does not decide the issues and cannot itself require the final release of the petitioner.") (internal quotation marks omitted).

After the Superior Court issues the writ, the respondent must file a "return" responding to the allegations in the habeas corpus petition. 5 V.I.C. § 1308. "The return, which must allege facts establishing the legality of the petitioner's custody, becomes the principal pleading and is analogous to the complaint in a civil proceeding." *Romero*, 883 P.2d at 392 (citation and internal quotation marks omitted). Next, the official having custody of the petitioner must "bring the body of the party in his custody" before the court so that the Superior Court can "proceed to hear and examine the return, and such other matters as may be properly submitted to its hearing and consideration." 5 V.I.C. §§ 1309-10. "Upon the submission of the written return, the petitioner 'may deny or controvert any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his

discharge.' " *Romero*, 883 P.2d at 393 (quoting a statute substantially similar to 5 V.I.C. § 1311). "The petitioner's response to the return, commonly known as the traverse . . . is analogous to the answer in a civil proceeding." *Id.* (citations omitted). Once the Superior Court issues the writ, the Government files its return, and the petitioner files the traverse, "[t]he court shall thereupon proceed in a summary way to hear such proof as may be produced against such imprisonment or detention, or in favor of the same, and to dispose of such party as the justice of the case may require." 5 V.I.C. § 1311. During this proceeding, "[t]he court shall have full power and authority to require and compel the attendance of witnesses, by process of subpoena and attachment, and to do and perform all other acts and things necessary to a full and fair hearing and determination of the case." 5 V.I.C. § 1311.

 This statutory scheme makes clear that a petitioner who has made out a prima facie case for habeas corpus relief that is not procedurally barred is entitled to a writ of habeas corpus under 5 V.I.C. § 1304, and pursuant to the writ must be produced in court for an evidentiary hearing as provided for in 5 V.I.C. § 1311. In this case, the Superior Court granted the writ and scheduled a hearing for February 3, 2011, but continued it without specifying a new hearing date because neither party was ready to proceed. Afterwards, the Government filed the equivalent of a return on October 9, 2012. In that document, the Government stated that it reviewed the entire District Court transcript, "was able to confirm that [the District Court judge] selected juror number 173 to be on the jury panel in [Rivera-Moreno]'s case," and attached the complete *voir dire* transcript as an exhibit to its filing. (J.A. 895-96.) While the Government noted that it was unclear from the transcript if Juror No. 173 had been an alternate juror, its counsel "sought a copy of the jury list by filing a motion and renewed motion with the District Court," and as a result of that effort did, in fact, obtain "a copy of the jury list which showed that juror number 173 was not an alternate juror" and had, in fact, sat on the jury. (J.A. 896.) Moreover, the Government stated in its return that it was separately filing the jury list with the Superior Court under seal. (J.A. 896 n.1.)

 Thus, the Government not only conceded that Juror No. 173 sat on the jury, but actively provided the Superior Court with evidence from the District Court record conclusively establishing this fact. Nevertheless, both the magistrate and the judge essentially ignored the Government's filing and accompanying proofs, despite the fact that at this point in the

313

proceedings the Government's return had displaced Rivera-Moreno's habeas corpus petition as the principal pleading in the case. 5 V.I.C. §§ 1308-1310; *Romero*, 883 P.2d at 392 & n.6. Consequently, the Superior Court clearly committed reversible error in finding that the evidence did not conclusively show that Juror No. 173 sat on the jury that convicted Rivera-Moreno. *See Browne v. Gore*, 57 V.I. 445, 450 & n.2 (V.I. 2012) (reversible error for judge to issue decision based on mistaken belief that brief had been filed); *Harris v. Garcia*, S. Ct. Civ. No. 2008-0082, 2010 V.I. Supreme LEXIS 3, at *11-12, *15-16 (V.I. Jan. 14, 2010) (unpublished) (reversing trial court's dismissal of case based on judge's mistaken belief that certain documents had not been filed with the court); *Rivera-Mercado v. General Motors Corp.*, 51 V.I. 307, 312 (V.I. 2009) (reversing trial court based on its failure to consider affidavits filed by plaintiff, as demonstrated by judge's "patently incorrect" finding that affidavits had never been filed).

Nevertheless, the fact that the Superior Court committed reversible error in this regard does not necessarily require that this Court reverse the Superior Court on this basis. When, on appeal, this Court applies a plenary standard of review to the underlying Superior Court decision, it can, "in the interests of judicial economy, exercise [its] discretion" to overlook the Superior Court's procedural error and analyze the legal issue for the first time on appeal. *Browne*, 57 V.I. at 453 n.5 (citing *United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 708 n.3 (V.I. 2011)). However, if this Court applies a more deferential standard of review, such as abuse of discretion, it must remand the matter to the Superior Court unless resolution of the issue is so clear-cut that the Superior Court can only rule one way without abusing its discretion. *Joseph*, 60 V.I. 338 (citing *Harris*, 2010 V.I. Supreme LEXIS 3, at *12).

As noted in the discussion above, the Virgin Islands habeas corpus statutes generally require that the Superior Court hold an evidentiary hearing after it has concluded that a petitioner has established a prima facie case for relief and the respondent has filed a return. 5 V.I.C. § 1311. An evidentiary hearing, however, is not necessary if the parties' filings reveal absolutely no factual disputes. *Romero*, 883 P.2d at 392. In this case, Rivera-Moreno and the Government fully agree on all the pertinent facts, and the primary issue of disagreement involves a pure question of law: whether the District Court's placement of Juror No. 173 on the jury violated Rivera-Moreno's right to trial by an impartial jury

and to due process of law. And given the Superior Court's substantial and largely inexcusable six-year delay in adjudicating Rivera-Moreno's habeas corpus petition, the interests of justice would be best served by this Court addressing the underlying legal issues on appeal instead of remanding the matter for the Superior Court to do so in the first instance. *See In re Elliot*, 54 V.I. 423, 430 (V.I. 2010) ("[T]he Legislature has mandated that the Superior Court give petitions for writ of habeas corpus expedited consideration.") (citing 5 V.I.C. § 1304). Thus, rather than reversing the January 9, 2014 order on grounds that the record clearly established that Juror No. 173 sat on the jury and contributed to the final guilty verdict, we proceed to determine whether Juror No. 173's presence on the jury violated Rivera-Moreno's constitutional rights so as to warrant a new trial on the local charges.

### 2. *Right to Trial By an Impartial Jury*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI. Additionally, courts have consistently interpreted the Due Process Clauses of both the Fifth and Fourteenth Amendments as mandating trial by an impartial jury.[11] *Smith v. Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982); *Ristaino v. Ross*, 424 U.S. 589, 595 n.6, 96 S. Ct. 1017, 47 L. Ed. 2d 258 (1976); *Rideau v. Louisiana*, 373 U.S. 723, 725-26, 83 S. Ct. 1417, 10 L. Ed. 2d 663 (1963); *United States v. Fambro*, 526 F.3d 836, 848 & n.80 (5th Cir. 2008) (citing *Morgan v. Illinois*, 504 U.S. 719, 726-27, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992)). For purposes of all three amendments, "[a]n impartial jury consists of nothing more than jurors who will conscientiously apply the law and find the facts." *Cascen v. People*, 60 V.I. 392, 415 (V.I. 2014) (quoting *United States v. Jones*, 566 F.3d 353, 358 (3d Cir. 2009)); *see Wainwright v. Witt*, 469 U.S. 412,

---

[11] The Fifth and Sixth Amendments, as well as the Due Process Clause of the Fourteenth Amendment, are applicable to the Virgin Islands by virtue of section 3 of the Revised Organic Act. 48 U.S.C. § 1561 ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States . . . the first to ninth amendments inclusive [and] the second sentence of section 1 of the fourteenth amendment.").

423, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985); *Lockhart v. McCree*, 476 U.S. 162, 178, 106 S. Ct. 1758, 90 L. Ed. 2d 137 (1986).

In this case, the District Court record clearly reflects that Juror No. 173 raised his hand when the judge asked the prospective jurors if any of them knew or heard of Rivera-Moreno prior to trial. The record further establishes that Juror No. 173 stated that he felt Rivera-Moreno was guilty, and that the judge found that Juror No. 173 could not keep an open mind and decide the case impartially based solely on the evidence introduced at trial, ultimately resulting in his dismissal for cause. Yet despite that dismissal, Juror No. 173, apparently through inadvertence, was nevertheless empaneled as a juror and participated in the deliberations that resulted in Rivera-Moreno's conviction on all charges.

The Government, while conceding all of these facts, maintains in its appellate brief that Rivera-Moreno is not entitled to habeas relief because he purportedly has not suffered any prejudice. Specifically, the Government contends that the District Court instructed all of the jurors, including Juror No. 173, as to the appropriate burden of proof, and that the jurors are presumed to have followed those instructions. Moreover, the Government invokes the general principle that all jurors are presumed to be impartial until proven otherwise.

█ The Government is correct that this Court will generally "presume that jurors follow the instructions they are given," *Francis v. People*, 59 V.I. 1075, 1080 (V.I. 2013) (collecting cases), and that "empaneled jurors are not presumed to be prejudiced or unqualified." *Todmann v. People*, 59 V.I. 926, 939 (V.I. 2013) (citing *United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997)). The Government ignores, however, that these presumptions are precisely that — presumptions, i.e., "procedural device[s] to force the party against whom the presumption operates to come forward with rebuttal evidence." *Walker v. Mortham*, 158 F.3d 1177, 1183 n.10 (11th Cir. 1998); *see Correia v. Fitzgerald*, 354 F.3d 47, 52 (1st Cir. 2003) ("[T]he presumption that jurors follow the court's instructions is rebuttable."); *Hunt v. State*, 345 Md. 122, 691 A.2d 1255, 1267 (1997) (a defendant may overcome the presumption that juror is not biased).

█ In this case, the colloquy between Juror No. 173 and the judge rebuts both of these presumptions. While the Government cites to cases where jurors initially expressed some familiarity with the defendant or the crime and then stated that they could lay aside their initial opinions and render a verdict based on the evidence, Juror No. 173 never testified that

he could disregard his preconceived notions about Rivera-Moreno. Significantly, the judge found the responses of Juror No. 173 to be credible, in that he excused him for cause,[12] a determination that "may be set aside only for manifest error," for "a trial court's assessment of juror impartiality derives from the fundamental role '[d]emeanor plays . . . not only in determining juror credibility but also in simply understanding what a potential juror is saying.' " *United States v. Moreno Morales*, 815 F.2d 725, 733 (1st Cir. 1987) (quoting *Patton v. Yount*, 467 U.S. 1025, 1038 & n.14, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984)); *see also Reynolds v. United States*, 98 U.S. 145, 156-57, 25 L. Ed. 244 (1879) ("[T]he manner of the juror while testifying is often times more indicative of the real character of his opinions than his words. . . . Care should, therefore, be taken in the reviewing court not to reverse the ruling below . . . except in a clear case."). Thus, Juror No. 173's own admission of bias, combined with the judge striking him for cause, constitutes more than sufficient evidence to rebut any presumption of impartiality. *Irvin v. Dowd*, 366 U.S. 717, 724, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961) ("[A] trial by jurors having a fixed, preconceived opinion of the accused's guilt would be a denial of due process.").

Likewise, Juror No. 173's statements to the judge rebut any presumption that, upon his placement on the jury, he would abide by the judge's instructions to decide the case solely on the evidence presented. During *voir dire*, the judge expressly asked Juror No. 173 if, "were [he] chosen as a juror," he could "sit in this jury box with an open mind and decide this case fairly and impartial[ly] and solely on the basis of the testimony and the evidence produced in this courtroom," to which Juror No. 173 replied that he could not. (J.A. 75.) Given that the judge found

---

[12] In its brief, the Government asserts that the trial judge, by permitting Juror No. 173 to sit on the jury, "ma[de] an implicit factual finding that the juror, No. 173, was able to put aside any opinion he may have and render a fair verdict based on the facts." (Appellee's Br. 12.) However, the transcript of the *voir dire* proceeding clearly reflects that the judge explicitly found Juror No. 173 to be biased and dismissed him for cause, and that, for whatever reason, other dismissed prospective jurors lingered in the courtroom and could not be easily distinguished from those who had not been dismissed. Significantly, as noted earlier, there is one other documented instance of a juror — Juror No. 69 — who had been dismissed for cause reentering the jury pool and proceeding deep into the selection process, only to be dismissed for a second time after counsel for another defendant brought the matter to the judge's attention. (J.A. 159.) In other words, the Government's position that the judge implicitly set aside his earlier explicit finding of bias has absolutely no basis in the record.

Juror No. 173's representations credible and dismissed him for cause, there is simply no reason to believe that Juror No. 173, when mistakenly empaneled as a juror, would abide by the judge's subsequent instructions to "decide this case fairly and impartial[ly] and solely on the basis of the testimony and the evidence produced in th[e] courtroom." (J.A. 75.)

 Thus, empaneling Juror No. 173 unquestionably violated Rivera-Moreno's constitutional right to be tried by an impartial jury, even if all of the remaining jurors were all unbiased. *See United States v. Martinez-Salazar*, 528 U.S. 304, 316, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000) ("[T]he District Court's ruling [did not] result in the seating of any juror who should have been dismissed for cause. As we have recognized, that circumstance would require reversal."); *Ross v. Oklahoma*, 487 U.S. 81, 85, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988) ("Had [the biased juror] sat on the jury that ultimately sentenced petitioner to death . . . the sentence would have to be overturned."); *Parker v. Gladden*, 385 U.S. 363, 366, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1966) (a defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors"). The Government, however, also contends that even if the empanelment of Juror No. 173 violated Rivera-Moreno's constitutional rights, this Court should nevertheless disregard the error as harmless in light of what it maintains is overwhelming evidence of Rivera-Moreno's guilt. *See* V.I.S.Ct.R. 4(i) ("No error or defect in any ruling or order . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.").

 Despite the Government's insistence that the evidence clearly established that Rivera-Moreno was guilty of all the charged offenses, we decline to review for harmless error.[13] The United States Supreme Court

---

[13] Nevertheless, even if we were inclined to review for harmless error, we would have no hesitation in holding that the error was not harmless in this case. The Third Circuit, in its unpublished opinion affirming Rivera-Moreno's conviction, found merit in Rivera-Moreno's claim that the District Court should have ordered a change of venue, but declined to order a new trial due to the strength of the jury selection procedure:

Moreno's case undoubtedly was a *cause célèbre* on the relatively small island of St. Croix. It does not follow that the district court abused its discretion by refusing to transfer the trial. *The record reveals that the district court excused all potential jurors who so much as suggested that they were incapable of deciding the case impartially.* The district court also conducted a thorough and artful *voir dire* of all potential jurors that

has identified two types of constitutional errors: structural and trial. *Arizona v. Fulminante*, 499 U.S. 279, 306-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). A "trial error" is an "error which occurred during the presentation of the case to the jury," such as the wrongful admission of an involuntary confession or other evidence that should have been suppressed, "and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307-08. However, "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California*, 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). These errors, known as structural errors, "are structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards" because "[t]he entire conduct of the trial from beginning to end is obviously affected." *Fulminante*, 499 U.S. at 309-10. Such structural errors include the total deprivation of the right to counsel, *see Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), the case being presided over by a biased judge, *see Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927), and the unlawful exclusion of members of a certain race from a jury, *see Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986). In other words, a structural error differs from a trial error in that it denies "basic protections" such that "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986); *see also* Gessner H. Harrison, *State v. Harrison, The Harmless Error Doctrine,*

---

admitted having read or heard anything about the case through the news media or any other source. *Only those who stated that they had an open mind and could decide the case impartially, based solely on the evidence and testimony adduced at trial, were allowed to sit. Furthermore, none of the empaneled jurors stated that they had formed any bias against the defendants or any opinion as to the defendants' guilt or innocence.* This distinguishes the present case from *Irvin v. Dowd*, 366 U.S. 717, 728, 81 S. Ct. 1639, 1645, 6 L. Ed. 2d 751 (1961), in which two-thirds of the empaneled jurors admitted to possessing a belief that the defendant was guilty before hearing any testimony.

(J.A. 968 (emphases added).) Given this language in the Third Circuit's opinion, it appears probable, had the empanelement of Juror No. 173 been brought to that court's attention, that the Third Circuit would have not only ordered a new trial, but also ordered a change of venue on remand.

.

*and Criminal Sentencing in Arizona*, 31 ARIZ. ST. L.J. 1395, 1411 (1999) (observing, based on Supreme Court precedent, that "structural defects automatically require reversal" and that the presumption of an adverse effect on a defendant arising from a structural defect "is insurmountable").

 The United States Supreme Court has implicitly held that empanelment of a biased juror constitutes a structural error that is not amenable to harmless error review. *See, e.g., Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (holding that "there is a strong presumption" that an error is subject to harmless error review "if the defendant had counsel *and was tried by an impartial adjudicator*") (emphasis added) (quoting *Rose*, 478 U.S. at 579); *Martinez-Salazar*, 528 U.S. at 316 ("[T]he District Court's ruling [did not] result in the seating of any juror who should have been dismissed for cause. As we have recognized, that circumstance would require reversal."); *Ross*, 487 U.S. at 85 ("Had [the biased juror] sat on the jury . . . the sentence would have to be overturned."); *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S. Ct. 2045, 95 L. Ed. 2d 622 (1987) (plurality opinion) ("We have recognized that 'some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error.' The right to an impartial adjudicator, be it judge or jury, is such a right." (quoting *Chapman*, 386 U.S. at 23 & n.8)). Consequently, the strength of the evidence supporting Rivera-Moreno's local convictions is simply irrelevant; because the District Court empaneled a biased juror, even if unintentionally, Rivera-Moreno is entitled to a new trial on those charges.[14] *See Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008) ("The presence of a biased juror is a structural error not subject to harmless error analysis."); *Sanders v. Norris*, 529 F.3d 787, 791 (8th Cir. 2008) ("[T]he failure to strike a biased juror . . . result[s] in structural error[ ]."); *United States v. Nelson*, 277 F.3d 164, 206 (2d Cir. 2002) ("[T]rying an accused before a jury that is actually biased violates even the most minimal standards of due process."); *see also Puckett v. United States*, 556 U.S. 129, 140-41, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009)

---

[14] Because we conclude that the placement of Juror No. 173 on the jury violated Rivera-Moreno's Sixth Amendment right to trial by an impartial jury and his due process rights under the Fifth or Fourteenth Amendments, we need not determine his alternate claim that his court-appointed attorney's failure to object to Juror No. 173's empanelment or to raise the juror bias issue on appeal constitutes ineffective assistance of counsel.

(noting structural errors will often be present when the error (1) necessarily renders a trial unfair or unreliable for determining guilt or innocence, (2) defies analysis by harmless-error standards by affecting the entire adjudicatory framework, and/or (3) presents difficulty in assessing the effect of the error, more than for other errors subject to harmless error review).

 We recognize, of course, that the Government is correct that the record contains no indication that the remaining 11 jurors were biased, or that the trial judge's instructions to the jury were erroneous. We emphasize, however, that the right to a trial by an impartial jury belongs to the defendant, and that the United States Supreme Court has emphatically admonished that a defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors." *Parker*, 385 U.S. at 366. We also acknowledge the potential unfairness to the prosecution in ordering a new trial more than 20 years later based on an error that was not of the Government's own making. However, we again note that the United States Constitution does not confer rights on the prosecution; rather, the right to due process belongs to criminal defendants. *United States v. Thoms*, 684 F.3d 893, 902-03 (9th Cir. 2012) (holding that the prosecution may not assert a violation of its right to due process because "the government . . . has no due process rights"). Given that we are bound by the United States Supreme Court's holding that the presence of even a single biased juror constitutes a structural defect in a criminal trial, the effect of which cannot simply be neutralized under the guise of harmless error, we possess no option other than to order a new trial on the local charges.

## III. CONCLUSION

The Superior Court erred when it converted Rivera-Moreno's habeas corpus petition into a motion for new trial or judgment or acquittal, since Virgin Islands law authorizes remedies other than discharge from custody when a prisoner is able to demonstrate that his incarceration is unlawful. Moreover, the Government has also waived its challenge to the purported technical defects in Rivera-Moreno's habeas corpus petition, and cannot seek dismissal of his petition solely on the grounds that Rivera-Moreno could have, but did not, raise these issues as part of his earlier direct appeal to the Third Circuit. Additionally, the fact that the District Court adjudicated Rivera-Moreno guilty of both local and federal offenses as part of the same proceeding should not preclude Rivera-Moreno from seeking, and the Superior Court ordering, a new trial solely on the local charges.

Turning to the merits, the Superior Court clearly erred when it denied the habeas corpus petition on grounds that Rivera-Moreno failed to prove that Juror No. 173 actually sat on the jury. And because the empanelment of a biased juror constitutes a structural error that mandates reversal without regard to whether the underlying error was harmless, Rivera-Moreno has demonstrated his entitlement to habeas relief. Accordingly, we reverse the January 9, 2014 order and remand the case to the Superior Court so that it may grant Rivera-Moreno's habeas corpus petition, vacate the portion of the December 18, 1991 judgment and commitment adjudicating him guilty of first-degree murder and other local charges, and order a new trial on the local charges, if the Government be so advised.[15]

---

[15] As indicated earlier, Rivera-Moreno's co-defendant, Harold Oveson, had also filed a petition for writ of habeas corpus with the Superior Court, which, like Rivera-Moreno's petition, requested a new trial due to Juror No. 173's improper empanelment. *Oveson*, 2011 U.S. Dist. LEXIS 45540 at *1. Although the Appellate Division, in an April 26, 2011 opinion, reversed the Superior Court's dismissal of his habeas corpus petition for lack of jurisdiction and remanded the case to the Superior Court to issue a decision on the merits, this Court takes judicial notice that Oveson's habeas corpus petition, which had been docketed by the Superior Court as Super. Ct. Civ. No. 0246/2006 (STX), remains pending to this day.

This Court has previously held that when a co-defendant receives the benefit of a new trial or other remedy based on a legal issue that affects both defendants, both defendants should receive the benefit, even if only one defendant raised the issue on appeal. *Boston v. People*, 56 V.I. 634, 646 (V.I. 2012). Oveson and Rivera-Moreno, however, have not raised their claims as part of the same habeas corpus proceeding, and despite the similarity of the legal issues, the Superior Court failed to consolidate the matters. Nevertheless, this serves as no bar to this Court providing Oveson with comparable relief, given that Virgin Islands law authorizes this Court to "transfer to itself any action or proceeding originated or pending in another local court or administrative agency within the Territory upon a finding that such a transfer will promote the administration of justice." 4 V.I.C. § 32(d).

Here, our holding that Rivera-Moreno is entitled to a new trial because Juror No. 173's empanelment violated his rights to trial by an impartial jury and to due process necessitates that Oveson receive the same relief, given that Juror No. 173 stated during *voir dire* that he believed that all of the defendants were guilty. (J.A. 75.) Furthermore, the Superior Court, by failing to issue a merits ruling on Oveson's habeas corpus petition for more than three and a half years, has disregarded this Court's directive that habeas corpus cases receive expedited consideration. *In re Elliot*, 54 V.I. at 429-30. Moreover, by affording Oveson habeas corpus relief immediately, the interests of justice shall be furthered in that the Government may try Oveson and Rivera-Moreno together, as it had when the charges were originally filed. Accordingly, this Court directs that this opinion be transmitted to the judge presiding over Super. Ct. Civ. No. 0246/2006 (STX), as well as counsel for the parties in that case, and advises the judge and the parties that this Court will entertain a petition to transfer Super. Ct. Civ. No. 0246/2006 (STX) to this Court — as is authorized by section 32(d) of title 4 — unless Oveson's habeas corpus petition is adjudicated within 45 days.